# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

## JULY TERM, 1881.

[No. 1,080.]

### JACOB KLEIN, APPELLANT, v. JOHN H. KINKEAD, GOVERNOR, ET AL., RESPONDENTS.

STATUTE TO EMBRACE BUT ONE SUBJECT—SECTION 17 OF ARTICLE IV. OF THE CONSTITUTION CONSTRUED.—*Held*, that the general purpose of section 17 of article IV. of the constitution, that "each law shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title," is accomplished when a law has but one general object which is fairly indicated by its title.

IDEM—STATUTE 1881, 59, CONSTRUED—CARE OF INSANE.—The "act to provide for the taking care of the insane of Nevada" provides for the construction of an asylum; that the money appropriated for that purpose shall be taken from the state school fund, and in its place there shall be deposited state bonds, bearing interest, etc., and provides for the levy and collection of a tax to meet the payment of said bond: *Held*, that the act embraces but one subject, the care of the insane, which is fairly expressed in its title.

IDEM.—The different steps by which the result is to be accomplished are not different subjects, but minor parts of the same general subject.

BONDED INDEBTEDNESS OF STATE—SECTIONS 2 AND 3 OF ARTICLE IX. OF THE CONSTITUTION CONSTRUED.—In construing these provisions of the constitution: *Held*, that the object in authorizing a bonded indebtedness was to enable the state to maintain its business upon a cash basis, and that the legislature has the power to direct the issuance of bonds at any time, so long as it does not conflict with the limitation as to the amount

IDEM—AMOUNT OF INDEBTEDNESS.—In construing the various statutes rela-
tive to the territorial indebtedness: *Held*, that the act in question does
not contemplate an indebtedness in excess of that authorized by the con-
stitution..

IDEM—SCHOOL FUNDS—SECTION 3, ARTICLE XI., CONSTITUTION.—Under sec-
tion 3, article XI., of the constitution, the legislature is commanded to
invest certain moneys received for educational purposes in United States
bonds or the bonds of this state: *Held*, that the issuance of the bonds
provided for in the act in question is not an evasion of the investment
directed by the constitution.

APPEAL from the District Court of the Second Judicial
District, Ormsby County.

The facts appear in the opinion.

*C. S. Varian,* for the Appellant:

I. The title of the act does not embrace the subject of
sections 11 and 12. The act embraces more than one sub-
ject. Neither the purpose to make a state loan and public
debt, nor to invest school moneys, is indicated by the title.
It may be that members of the legislature who voted for the
bill, as well as the people lured into security by its title,
although willing to provide for the insane, would have found
good and convincing objection to the contracting of a pub-
lic debt, or the diversion of school moneys by a misnamed
investment for such purpose. The ordinary mode of rais-
ing money to conduct and maintain the public business is
by taxation. The question of contracting a public debt in-
volves grave considerations of necessity and public policy.
The rate of interest and time of payment, together with the
taxation required to meet the obligation, all present ques-
tions of great interest to the people, and upon which they
are entitled to be heard. This is also true of the question
of investing school moneys. There is a general law on the
statute book giving the management and control of school
moneys to a state board of education. (2 Comp. L. 3322.)
There is no language in the title of the act which is elastic
enough to include the purposes and subjects embraced in
sections 11 and 12. The courts can not enlarge the scope
of the title. The constitution has made the title the con-
clusive index to the legislative intent as to what shall have

operation. (*Mewherter* v. *Price*, 11 Ind. 199; *State* v. *Kinsella*, 14 Minn. 524; *Gaskin* v. *Meek*, 42 N. Y. 186; *People* v. *Allen*, Id. 404; *People* v. *Hills*, 35 Id. 449; *People* v. *O'Brien*, 38 Id. 193; *Ryerson* v. *Utley*, 16 Mich. 269; *Cutlip* v. *Sheriff*, 3 W. Va. 588; *People* v. *Father M. Society*, 41 Mich. 67; *Shepherd* v. *Helmers*, 23 Kan. 507; *State* v. *Silver*, 9 Nev. 227.) Three subjects are embraced in the law: 1. Providing for the insane; 2. Providing for a state loan; 3. Providing for the investment of school funds.

II. The loan authorized is not "for the purpose of enabling the state to transact its business upon a cash basis." (Secs. 2, 3, art. IX., Con.; sec. 1, art. XII., Con.) If building an insane asylum is to be considered as a part of the ordinary business of the state, the expense of doing so should be defrayed in the ordinary way out of the annual revenue. No necessity exists for the creation of a public debt to build an asylum. The power to contract such a debt is limited to the purpose "of enabling the state" to do its business. If it already has the power and is able in another and the usual way to carry out its purpose, the constitutional provision does not apply. Eliminating sections eleven and twelve from the law, and there still remains an appropriation to carry it into effect. As an appropriation in anticipation of revenue, it is within the power of the legislature and can be made effective. (Const. Debates, 754–756, 762 *et seq.*, 879; *Ash* v. *Parkinson*, 5 Nev. 15; Const., sec. 2, art. IX.; *State* v. *School Fund*, 4 Kan. 269.)

III. These sections authorize and direct the creation of a public debt in the sum of eighty thousand dollars, and the public debt of the state now exceeds the sum of three hundred thousand dollars. The territorial debt is wiped out by payment. (Stat. 1871, 81; 1873, 94; 1877, 191; 1879, 15; Const., art. XVII., secs. 7, 24.) The constitution does not say that upon payment of that debt, the state may go on forever, under pretense of revivifying it under different forms and names, and contract debts equal in amount to those paid. What it does say is that the assumption, *i. e.*, the undertaking to pay the old debt, shall not prevent the state from contracting the additional indebtedness.

(*People* v. *Johnson*, 6 Cal. 499; *Nougues* v. *Douglass*, 7 Id. 65; *Rodman* v. *Munson*, 13 Barb. 188, 63; *Scott* v. *Davenport*, 34 Iowa, 208; *State* v. *School Fund*, 4 Kan. 270.)

IV. These sections direct the diversion and transfer of the moneys pledged to educational purposes to another fund and for other purposes, and are unconstitutional. (Art. XI., sec. 3.) To preserve the fund it is apparent that all investments must be made in securities that some time or other can be made available to repay the money. To invest moneys in bonds means to loan them, so that they will produce returns by way of interest, and upon the expectation of realizing the principal upon the maturing of the bonds. The bonds of a state or of the general government are, within the contemplation of our constitution, always negotiable in open market. When such bonds are once upon the market they are the subject of purchase and sale, *i. e.*, of investment; and it is in this sense only that the moneys belonging to the school fund can be "invested" by the trustees of the fund. It is vain to attempt to fritter away the express provisions of the constitution by contending that the words "investment" and "bonds" have any other meaning than that known to commerce and the business world everywhere. By "state bonds" is meant something of value for purchase, investment, and income; not to the debtor state, but to the creditor capital, which owns it. There is no security in a paper never delivered by a state, and which remains in the vaults of its treasury. The power of the state is limited to an investment in constitutional bonds, already on the market, containing an obligation to pay some one, a sum certain and at a time certain, and secured by a revenue provided by authority. (*State Treasurer* v. *Horton*, 6 Kan. 354.)

*Lewis & Deal*, for Respondents:

I. The act in question embraces but one subject and matters properly connected therewith, which subject is briefly expressed in the title. (Sec. 17, art. IV., Const., is mandatory; *State* v. *Silver*, 9 Nev. 231.) In the construction of the provisions of this section in state constitutions the courts have adopted a liberal rule in favor of their

validity. (*State* v. *Ah Sam*, 15 Nev. 27; *Murphy* v. *Menard*, 11 Tex. 673; Cooley's Const.. Lim. 146; *Sun Mutual Ins. Co.* v. *New York*, 4 Seld. 241; *Brewster* v. *City of Syracuse*, 19 N. Y. 117; *People* v. *Mahaney*, 13 Mich. 495.) When the title of an act expresses a general purpose or object, all matters fairly and reasonably connected with it, and all necessary measures which will facilitate its accomplishment, are proper to be incorporated in the act, and are germane to its title. (*People* v. *Briggs*, 50 N. Y. 562; Sedg. on Stats. 41; *People* v. *Banks*, 67 N. Y. 572; *People* v. *Brinkerhoff*, 68 Id. 265; *Kerrigan* v. *Force*, Id. 384; *Billings* v. *The Mayor*, Id. 415; *Gloversville* v. *Howell*, 70 Id. 290; *Worthen* v. *Badgett*, 32 Ark. 496; *Gibson* v. *State*, 16 Fla. 291; *Gould* v. *Chicago*, 82 Ill. 472; *Farmers' Ins. Co.* v. *Highsmith*, 44 Iowa, 330; *Howland Coal Co.* v. *Brown*, 13 Bush (Ky.), 681; *New Orleans* v. *Dunbar*, 28 La. Ann. 722; *People* v. *Bradley*, 36 Mich. 447; *Perkins* v. *Du Val*, 31 Ark. 236; *Prescott* v. *City*, 60 Ill. 122; *People* v. *Wright*, 70 Id. 388; *People* v. *Brislin*, 80 Id. 423; *Crescent Gas Light Co.* v. *New Orleans*, 27 La. Ann. 138; *New Orleans* v. *New Orleans R. R. Co.*, Id. 414; *Ohio* v. *Covington*, 29 Ohio St. 102; *Shields* v. *Bennett*, 8 W. Va. 74; *Woodson* v *Murdock*, 22 Wall. 351; *Tallahassee Mfg. Co.* v. *Glenn*, 50 Ala. 489; *State* v. *Price*, Id. 568; *Burke* v. *Munroe Co.*, 77 Ill. 610; *Williams* v. *State*, 48 Ind. 306; *Harris* v. *People*, 59 N. Y. 599; *Morton* v. *Comptroller General*, 4 S. C. 430; *Hingle* v. *State*, 24 Ind. 32.)

II. The act is not special. It embraces all the insane, it is general in all its provisions, and it operates uniformly throughout the state. (*McGrath* v. *State*, 46 Md. 634; Cooley's Const. Lim. 128, n.; *State* v. *Commissioners*, 29 Md. 520; *Wheeler* v. *Philadelphia*, 77 Pa. St. 348.)

III. The erection of buildings for the care of the insane is a part of the business of the state. This duty is enjoined upon the legislature in the most comprehensive terms. (Sec. 1, art. XIII.) At the time the constitution was adopted there was no insane asylum in the state, and it was the intention of the framers of that instrument, that proper laws should be adopted with provision for the support of the insane. The authority given to provide for the

support of the insane carries with it the power to do everything necessary to attain that end.

IV. The tenth and eleventh sections of the act do not authorize the transfers of moneys pledged for educational purposes to another fund for other purposes. (Sec. 3, art. XI. of the Constitution.) The state is prohibited by it from ever using for any purpose any part of the principal of the proceeds from the sources mentioned, but the interest of the principal is permitted to be used for the benefit of the public schools. In order that any benefit can be derived from the moneys in the state school fund, it is necessary that the principal should be invested either in United States bonds or Nevada state bonds. In obedience to this section the legislature has from time to·time provided for the investment of · the moneys belonging to the state school fund. It is.made the duty of the proper state officers to cause the investment of the moneys in the state school fund, whenever there is any to invest, in United States securities, or in bonds of this state. There is no transfer of funds from the state school fund to any other fund authorized by sections 10 and 11 of the act in question within the prohibition of section 3, art. XI., but the authority is given to the state to borrow eighty thousand dollars upon the security of its bonds, as provided in that section. By the deposit of the state bonds in the state school fund, the credit of the state is pledged for the repayment of the money borrowed, and interest thereon. The test of this is whether a debt is created by the transaction in favor of the state school fund. If there is, there is no transfer of moneys from the state school fund to another fund .for other uses, but there is a strict compliance with the provisions of section 3, art. XI. of the constitution, and the laws passed to carry that section into effect.

V. The public debt of this state does not exceed three hundred thousand dollars, and it will not exceed it when the whole eighty thousand dollars appropriated by sections 10 and 11 is negotiated. (The various statutes and constitutional ·provisions bearing upon this subject are discussed at length.)

By the Court, BELKNAP, J.:

By an act passed at the last session of the legislature the respondents herein were, with others, created a board of commissioners for the care of the insane of this state. (Stats. 1881, 59.)

They are required by the act in question to cause to be erected upon land belonging to the state, near the town of Reno, an asylum of sufficient capacity for the care of one hundred and sixty patients. The act directs the time within which the building shall be completed, the material of which it shall be constructed, its maximum cost, and the manner in which contracts for its construction shall be made. It appropriates the sum of eighty thousand dollars for constructing and furnishing· the asylum, and in the eleventh section provides as follows: "The ·money herein appropriated shall be taken from the state school fund, and in its place shall be deposited eighty bonds of one thousand dollars each, bearing interest at the rate of four per cent. per annum; said bonds shall run for twenty years, but shall be redeemable by the state at its pleasure, after two years; said bonds shall be signed by the governor and state controller, countersigned by the state treasurer, and authenticated by the great seal of the state, and shall state in substance that the state of Nevada owes to the state school fund eighty thousand dollars, the interest on which sum, at four per cent. per annum, she agrees to pay during the life of said bonds, for the benefit of the common schools of the state; said bonds shall be lithographed, as is usual in similar cases, and deposited with the treasurer of the state. The interest on said bonds shall be, paid semi-annually; on the first days of January and July of each year, on the written order of the ·state board of education to the state controller, directing him to draw his warrant for the amount of such semi-annual interest on the indigent insane interest and sinking fund herein created. All sums derived from the interest of said bonds shall go into the general school fund, for the support of the common schools of the state, and for the regular and prompt payment of which the faith and credit of the state is hereby pledged."

The twelfth section provides for the levy and collection of a tax, the proceeds of which are appropriated for the payment of the principal and interest of the bonds mentioned in the preceding section. Subsequent sections provide for the care of the insane pending the completion of the building, their management thereafter, and other matters, which are not drawn in question. Appellant claims that so much of the act as is contained in the eleventh and twelfth sections is unconstitutional, and seeks by this action to restrain respondents from issuing the moneys in the state school fund, as they are directed to do by the twelfth section.

The first ground of objection to the validity of the act is that it does not comply with the requirements of section 17 of article IV. of the constitution. This section provides that each law enacted by the legislature shall embrace but one subject and matter properly connected therewith, and that such subject shall be briefly expressed in the title. The title of the act is "an act to provide for the taking care of the insane of the state of Nevada," and it is insisted that the act not only embraces the subject expressed in the title, but two other subjects; that is to say, provision for a state loan and for the investment of moneys of the state school fund.

The restriction upon the legislature contained in section 17 of article 4, was considered by this court in the case of *State* v. *Silver*, 9 Nev. 231. It was then declared that the design of the constitution in requiring that each enactment should contain but one subject and matter properly connected therewith, was to prevent improper combinations to secure the passage of laws having no necessary or proper relation, and which, as independent measures, could not be carried; and that the object of the other requirement, that the subject of the act should be expressed in the title, was that neither the members of the legislature nor the public should be misled by the title.

"The constitution does not require that the title of an act should be the most exact expression of the subject which could be invented," said the court of appeals of New York

in the matter of the petition of Mayer (50 N. Y. 504). "It is enough if it fairly and reasonably announces the subject of the act."

"The general purpose of these provisions is accomplished," says Judge Cooley in his Treatise on Constitutional Limitations, page, 143, "when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible."

It has accordingly been held in Kentucky, under a similar constitutional provision, that an act entitled "An act to amend the charter of the Cincinnati and Covington bridge company," a provision that the bridge company might sell and the city of Covington might subscribe for one hundred thousand dollars of the stock, and sell the bonds of the city and levy a tax to pay them, was valid. The court said: "None of the provisions of a statute should be regarded as unconstitutional where they all relate directly or indirectly to the same subject, have a natural connection, and are not foreign to the subject expressed in the title. * * * The power to sell stock to the city of Covington necessarily requires that a power should be conferred on the latter to subscribe and pay for it; for without such a power the power to sell would be nugatory. The subject is the same, although it relates to a transaction to which two corporations are parties, one of which only is named in the title of the act. If by the act a power had been conferred on the city of Covington to subscribe for the stock of any other corporation but the one named in the title of the act, then the provision would fall within the constitutional prohibition, and be clearly null and void. But as it is restricted in its operation to matters pertaining to the bridge company, and the provisions of the act, so far as they relate to the city of Covington, are apposite to the purpose which was intended to be effected by its passage, and are sufficiently indicated in its title, it is not liable to this constitutional objection. It was certainly not necessary for the legislature to pass two

separate acts to effect the object it had in view—one to en-
able the company to sell the stock to the city, and another
to enable the city to subscribe and pay for it. The consti-
tutional provision must receive a rational construction, and
not one that would lead to such an unnecessary and absurd
result." (2 Met. (Ky.) 219.)

In *People ex rel. Hayden* v. *City of Rochester*, 50 N. Y. 525,
it was held that, in an act entitled "an act in relation to the
erection of public buildings for the use of the city of
Rochester," a provision for selecting and procuring a site
for the contemplated buildings was valid under a similar
constitutional provision, upon the ground that it was a
necessary step towards the erection thereof. The court
said: "But buildings can no more be erected without sites
than without materials or means to defray the expense. All
these are details, and no reference thereto in the title is re-
quired. · The act in all its parts may and will, with the site
selected; be fully executed without any violation of the
constitution."

So, under a similar clause in the constitution of Illinois,
it was held that an act entitled "an act to authorize the
town of Ottawa to erect two bridges across the Illinois and
Michigan Canal," and containing provisions for raising
money to defray the cost of such bridges, did not embrace
more than one distinct subject, that the title was properly
expressed and the act valid. (*Ottawa* v. *The People*, 48 Ill.
233. See also *Brewster* v. *City of Syracuse*, 19 N. Y. 116;
*Gordon* v. *Cornes*, 47 Id. 608; *People ex rel. Rochester* v.
*Briggs*, 50 Id. 555; *People ex rel. Burroughs* v. *Brinkerhoff*,
68 Id. 259.)

We are unable to find anything in the act under con-
sideration that does not relate to the care of the insane.
The general subject of the act includes not only the con-
struction of an asylum but necessarily the means by which
the work is to be accomplished, and the proceedings neces-
sary to be adopted for the purpose of defraying the ex-
pense to be incurred. Certainly no one interested in the
act would fail to comprehend from its title that it contem-

plated the expenditure of money, for the care of the insane necessarily involves such expenditure.

The legislature is the sole judge of the mode by which this money shall be provided, and was equally authorized to raise it by loan or appropriate it from the general revenues. The act has but one subject, and that is the care of the insane. All of its provisions have this common object in view. The different steps by which the result is to be accomplished are not different subjects, but minor parts of the same general subject, and legislation would be impossible if all of these details were required to be provided for by distinct enactments.

The second objection to the validity of the act arises under sections 2 and 3 of article IX. of the constitution. By section 2 the legislature is required to provide for an annual tax sufficient to defray the estimated expenses of the state for each fiscal year, and in case the expense shall in any year exceed the revenue, the legislature shall provide for levying a tax sufficient, with other sources of income, to pay the deficiency as well as the estimated expenses of the ensuing year or two years. Section 3, for the purpose of enabling the state to transact its business upon a cash basis, authorizes a bonded debt which shall never, in the aggregate, exceed the sum of three hundred thousand dollars, except in certain enumerated cases. It is contended that the building of an insane asylum is a part of the ordinary business of the state, and in view of the provisions contained in the sections mentioned, the expense of constructing such building should be taken from the revenues arising from taxation.

The authority to create a bonded debt is subject to no restrictions or conditions whatever save that such debt shall not exceed the sum of three hundred thousand dollars, and the law authorizing it shall provide for its payment within twenty years by taxation. The constitution nowhere declares the necessity which shall exist as prerequisite to the issuance of bonds or the making of a loan under this section, nor the use to which money obtained by such loan

shall be applied. From the language employed by the instrument itself, as well as from the debate in the convention upon those portions of the constitution relating to state finances, the object in authorizing a bonded indebtedness was to enable the state to maintain its business upon a cash basis, notwithstanding financial exigencies, without resorting to onerous taxation.

For the first three years subsequent to the adoption of the constitution, the legislature was restricted from levying a tax for state purposes exceeding one per cent. per annum. (Sec. 24, art. XVII.) In the discussion of this restriction in the constitutional convention it was in several instances urged that if this rate of taxation failed to produce the necessary revenue to defray the expenses of the state, relief could be had by the issuance and sale of the bonds of the state to the amount of three hundred thousand dollars, under the provisions of section 3 of article IX. No suggestion was ever made, so far as appears from the debates, of the right of the legislature to seek relief at any time by this means. It has the power to direct the issuance of bonds under this clause at any time so long as it does not conflict with the limitation as to amount.

The next objection is that the act contemplates an indebtedness in excess of that authorized by the constitution. Under section 7 of article XVII. of the constitution, the state was required to assume all debts and liabilities of the territory of Nevada unpaid at the time of the admission of the state into the Union, but it was provided that such assumption should not prevent the state from incurring the three hundred thousand dollars indebtedness as provided in section 3 of article IX. already mentioned. At the session of 1871 the legislature determined the territorial indebtedness to be three hundred and eighty thousand dollars, for which amount a loan, bearing interest at nine and one half per cent. per annum, payable in fifteen years, was by authority of law negotiated. (Stats. 1871, 80.)

Before this loan became due, and for the evident purpose of reducing the rate of interest which the state was paying upon it, the legislature, by acts approved March 8, 1877,

and January 28, 1879, respectively, authorized the purchase and retirement of the bonds issued under the act of 1871, and the issuance of a new bond for three hundred and eighty thousand dollars, bearing interest at the rate of five per cent. per annum. In the purchase of the bonds of 1871 the sum of three hundred and twenty-five thousand dollars belonging to the school fund was used, and the new bond was executed to and became the property of the school fund.

These proceedings it is claimed amounted to a payment of the bonds of 1871, and extinguishment of the territorial indebtedness; that the three hundred and eighty thousand dollars in bonds now outstanding, and in the school fund, exceeds the maximum indebtedness allowed by the constitution, and therefore the legislature has no authority to issue the eighty thousand dollars of bonds provided for by this act. But this position is untenable. The proceedings by which the bonds of 1871 were retired, and the three hundred and eighty thousand dollar bond, now in the school fund, issued, did not extinguish the territorial indebtedness. That indebtedness still exists, but it is evidenced by a different obligation; that is to say, by a bond for three hundred and eighty thousand dollars, bearing five per cent. per annum interest, instead of bonds for the same amount, bearing nine and one half per cent. interest per annum.

Finally, objection is made that the eleventh section of the act directs a transfer of the moneys of the school fund to another fund and for another purpose. Under section 3 of article IX. of the constitution, the proceeds of the sales of public lands donated to the state by the general government, as well as moneys received from other sources, are solemnly pledged for educational purposes, and required to be placed in the school fund, and not be transferred to any other fund or for other use. This fund the legislature is commanded to invest in "United States bonds or the bonds of this state," and the interest only of the capital of the fund shall be used for educational purposes.

In this behalf it is urged that the issuance of the bonds provided for in this act is an evasion of the investment di-

rected by the constitution; that the constitution contemplates the purchase of bonds existing at the time of the passage of the enactment authorizing the loan. This objection is without force. It is manifest that the bonds provided for by this act are as much the bonds of the state as if they had been outstanding at the time of the passage of the act, and were thereafter to be purchased for the benefit of the school fund. The legislature primarily directs the investment of the moneys in this fund, and so long as it complies with the directions of the constitution, and makes the loan upon the securities required by that instrument, the loan will be valid. A discretionary power is conferred to invest the fund either in the bonds of the state or of the general government, and any attempt on the part of courts to supervise such discretion would be an invasion of the authority of the legislature.

The act being constitutional, the judgment of the district court refusing to restrain respondents from proceeding, should be affirmed, and it is so ordered.