[No. 965.]

## THE STATE OF NEVADA, EX REL. F. L. AUDE, RELATOR, *v.* JOHN H. KINKEAD, RESPONDENT.

DISTRICT JUDGES—ART. VI. SECTION 5 OF THE CONSTITUTION CONSTRUED.—In construing this provision of the constitution: *Held*, that the legislature had the power to reduce the number of district judges in the first judicial district.

IDEM—STATUTE CONSTRUED.—*Held*, that since the passage of the act of February 27, 1866 (Stat. 1866, 140, sec. 1), the first judicial district has been entitled to but one judge.

PETITION for mandamus.

The facts appear in the opinion.

*Wells & Stewart*, for Petitioner:

I. Petitioner bases his claim to a commission, and his right to hold said office of district judge of the first judicial district, upon the provisions of sec. 5, art. 6, of the constitution; and claims that all legislation intended to deprive said district of three district judges, is unconstitutional and void, under said sec. 5, art. 6, and that, therefore, his said election was regular and legal. The districting of the state in the constitution was had, in order that the judicial part of the machinery of the state government might be put in motion before it could be done by the legislature. This is obvious from the language used, and the time fixed by the section for the first district judge elected under it, to go

into office the first Monday in December, 1864, and one week before the first meeting of the legislature under the constitution. But the next thing provided for by the framers of the constitution, after districting the whole state, was to provide means whereby that districting should not remain perpetual, but might be changed, from time to time, as the convenience of the public and the proper dispatch of business might require. Hence, this phrase was next put into the section, to wit: "The legislature may, however, provide by law for an alteration in the boundaries or divisions of the district herein provided, and also for increasing or diminishing the number of the judicial districts and judges therein." We claim that two separate and distinct propositions are contained in this sentence, to wit: 1. The power is given to retain the original nine districts, and to rebound or re-divide them, if desired by the legislature, in such way as to better subserve the business necessities and convenience of the public; and, 2. The power is given to re-district the entire state, and make of it just as many districts more or less than nine, as should be deemed necessary and convenient, so as not to affect a then incumbent of the office of district judge. But it is plain and logically indisputable, that in the exercise of the second power granted in this sentence, the legislature must, if it increase or diminish the number of judicial districts, also increase or diminish the number of judges.

II. The letter of a constitutional provision should never be interfered with, except when entirely free from doubt as to the construction given; and if the point be one involving public policy only, no equitable construction is permissible. (Sedg. on S. & Con. Law, 19 and 370 and note, 248, 251, 263, *et seq.;* Smith's Com. 831 *et seq.*) Every clause in a section of law, statutory or constitutional, must, if possible, have some effect. (Sedg. 200 and note; Smith's Com. 710; 1 Bibb. 210.)

III. The act of 1866, reducing the number of judges in the first district, is unconstitutional and void. (Sedg. 411 and note, also, 180–182; 3 Coms. 547–568.) As to purview and proviso: Sedg. 45 and 49 and note; 10 Peters, 449;

10 Wheaton 1 and 30; 2 Dwarris on Stat. 515; Smith's Com. 709 *et seq.*, and 712.

IV. Where a constitution takes away the power from the legislature to pass laws on a given subject, this is a repeal of existing laws on that subject. (Sedg. 555, 556; 4 Scann. 344; 4 Nev. 472.)

*M. A. Murphy,* Attorney-General, for Respondent, cites the following authorities: Sedg. on Cons. Law, 244, 409, 413; Cooley's Cons. Lim. 54, 58; 7 Md. 135; 54 Penn. St. 255; 49 N. Y. 284; 24 N. Y. 488; 41 Cal. 147.

By the Court, BEATTY, C. J.:

It is the official duty of the respondent, as governor, to issue commissions to those who are elected to the office of district judge. The petitioner claims to have been elected a judge of the first district at the last general election, but the respondent refuses to grant him a commission, and this proceeding has been instituted for the purpose of compelling him to do so. Respondent demurs to the petition for mandamus, and the question is whether, upon the facts alleged, the petitioner is entitled to the writ.

It appears that at the general election, held on the fifth of November, 1878, the petitioner and the Hon. Richard Rising were the only persons voted for for the office of district judge of the first district; that they were both eligible to the office; that Judge Rising received the highest number of votes and petitioner the next highest. The election of Judge Rising is conceded, but the petitioner contends that, under the Constitution of the State, the first district is entitled to three judges, and consequently that he also was elected. The respondent claims that the provision of the constitution giving three judges to the first district was intended to be a merely temporary arrangement; that it was within the power of the legislature to reduce the number, and that, since the passage of the act of February 27, 1866 (Stat. 1866, pp. 139, 140, sec. 1), the first district has been entitled to but one judge. The petitioner insists that the act referred to is unconstitutional, and that, notwith-

standing its passage by the legislature, the original provision of the constitution is still in force.

The question to be decided, therefore, resolves itself into this: Could the legislature reduce the number of judges in the first district? This depends upon the proper construction of sec. 5 of art. VI. of the constitution, which is as follows:

"Sec. 5. The state is hereby divided into nine judicial districts, of which the county of Storey shall constitute the first, the county of Ormsby the second. * * * The legislature may, however, provide by law for an alteration in the boundaries or divisions of the districts herein prescribed and also for increasing or diminishing the number of the judicial districts and judges therein. But no such change shall take effect, except in case of a vacancy, or the expiration of the term of an incumbent of the office. At the first general election under this constitution there shall be elected in each of the respective districts (except as in this section hereafter otherwise provided), one district judge, who shall hold office from and including the first Monday of December, A. D. 1864, and until the first Monday of January, in the year 1867; after the said first election there shall be elected at the general election which immediately precedes the expiration of the term of his predecessor, one district judge in each of the respective judicial districts (except in the first district, as in this section hereinafter provided). The district judges shall be elected by the qualified electors of their respective districts, and shall hold office for the term of four years (excepting those elected at said first election) from and including the first Monday of January next succeeding their election and qualification; *provided*, that the first judicial district shall be entitled to, and shall have, three district judges, who shall possess coextensive and concurrent jurisdiction and who shall be elected at the same times, in the same manner, and shall hold office for the like terms, as herein prescribed in relation to the judges in other judicial districts. * * *"

In accordance with the provisions of this section, three

judges were elected for the first district at the first election under the constitution in November, 1864. Their term expired on the first Monday of January, 1867. To succeed them but one judge was elected in November, 1866, and but one was elected in 1870 and in 1874, the general understanding being that the act of February, 1866, above cited, reducing the number of judges in that district to one, was entirely valid. Undoubtedly the same understanding prevailed at the recent election, and but one judge was really voted for.

There is a strong presumption in favor of the constitutionality of a law passed almost contemporaneously with the adoption of the constitution, and so long and so universally acquiesced in. No court would be justified in declaring such a law invalid unless forced to do so by the most cogent and conclusive reasoning. The argument in behalf of petitioner, though elaborate and very ingenious, is still far from convincing. Its fundamental fault is that it attempts, by the application of narrow and technical rules of statutory construction, to wrest the provisions of the constitution above quoted from their obvious meaning. We shall not attempt to follow the argument in detail, or to notice particularly the various propositions upon which it is based. It will be sufficient to state our own construction of the clauses in question, and the reasons which we think are sufficient to sustain our conclusions.

In the first place, there can be no doubt as to the fact that it was the intention of the framers of the constitution to empower the legislature to reduce the number of judges in the first district. This is sufficiently proved by the debates in the constitutional convention (650, 651, 713, *passim*). If further proof were necessary, it is afforded by the circumstances in view of which the convention acted. The condition of the country at that time was such as to forbid any other than a provisional arrangement as to the number of judges to be assigned to the respective districts. In Storey county there was such an immense accumulation of old business as to require for a time an extra number of judges, but it was foreseen that as soon as the old docket

was cleared off the number might be conveniently reduced. In no other county of the State was more than one judge required at that time, but it was natural to anticipate that at some future time the state of affairs prevailing along the Comstock might find its parallel in other localities and render it necessary to increase the number of judges in other districts.

In view of these facts there is no reason for taking the following language in any other than a literal sense: "The legislature may, however, provide by law for an alteration in the boundaries or divisions of the districts herein prescribed, and also for increasing or diminishing the number of the judicial districts and judges therein." This means that the legislature may increase or diminish the number of judges in the respective districts, and not, as petitioner contends, that the number of judges in the State may be incidentally increased or diminished by increasing or diminishing the number of districts. Besides being opposed to the natural import of the language of the constitution, this interpretation violates a cardinal rule of construction; it renders the words "and judges therein" meaningless and superfluous. For if the proposition upon which the whole argument of the petitioner rests is true—that is, that it has been established by the constitution, that, so long as it endures, the first district must have three judges, and every other district one, and only one judge—then the power to increase or diminish the number of the districts necessarily included the power to increase or diminish the number of judges in the state, and the sentence without the words "and judges therein" meant exactly as much as it is contended it means with them. We repeat, therefore, that the legislature was empowered to increase or diminish the number of the judges originally assigned to the respective districts, as provisionally organized by the constitutional convention; and we see no difficulty in answering any of the special reasons urged by the petitioner against this construction.

The proviso to section 7, article VI, which allows the legislature to designate other places than the county seat

for holding court in case a county should be divided into two or more districts, does not prove, it has no tendency to prove, that the convention intended to deprive the legislature of the power to assign more than one judge to a district. That was a provision for the benefit of counties of large area, with populations gathered about different centers. It could have no application to a small county with its whole population at the county seat.

Again, the power to "diminish" the number of judges in the respective districts is not a power to entirely deprive a district of any judge; it does not apply where a district has but one judge. To diminish means to make less, not to utterly wipe out.

It is true also that our conclusion involves the admission that the legislature might "in its caprice" (if it can be presumed ever to act from caprice) assign a hundred judges to one district; but the fact that a power is capable of abuse is no argument against its existence. Power must be reposed somewhere, and wherever it is lodged it may be abused. No people could live under a constitution which denied to its functionaries every power that could possibly be misemployed.

The petition for a mandamus is dismissed.