[No. 1236.]

THE STATE OF NEVADA ex rel. TRENMOR COFFIN, Relator, *v.* C. C. ATHERTON et al., COUNTY COMMISSIONERS OF ORMSBY COUNTY, Respondents.

CONSTITUTIONAL LAW—STATUTE 1885, 60—ONE JUDICIAL DISTRICT.—The act to redistrict the state (Stat. 1885, 60), so as to make but one judicial district, is constitutional.

IDEM—TITLE OF ACT—ONE SUBJECT.—The title of the act, "An act to redistrict the state of Nevada, prescribe the number and salaries of district judges, and fix the places of holding courts," does not contravene section 17 of article 4 of the constitution. It embraces "but one subject, and matter properly connected therewith."

IDEM—POWERS, DUTIES, AND FUNCTIONS OF JUDGES.—Section 4, giving the judges equal jurisdiction and power, authorizing them to hold court in any county, and to exercise the powers, duties, and functions of the court and

of judges in chambers, and to transact judicial business in the same county, at the same time, does not give the judges at chambers the powers, duties, and functions of a court, nor invest them with any other power than is presently possessed by the district judges under the constitution.

NON-JUDICIAL DAYS—NOT ABOLISHED.—Section 5, providing that "the district court shall always be open for the transaction of business," does not abolish the existing "non-judicial days," and even if it did, would not be beyond the powers of the legislature.

JUDGES' SALARIES—PAYMENT OF.—It is not in contravention of section 15, article 6, of the constitution, to provide that the judges' salaries shall be paid quarterly out of the county treasuries into the state treasury, and by the state treasurer paid to the judges in monthly installments.

IDEM—NECESSARY TRAVELING EXPENSES—NOT FEES.—The prohibition contained in section 10, article 6, of the constitution, against the judges receiving to their own use "any fees or perquisites of office," does not apply to "the necessary expenses actually paid by them, for traveling by public conveyance, in going to and from the place of holding court."

SELECTION OF PRESIDING JUDGE.—The authority given to the judges by section 9 of the act, to "select one of their number for presiding judge," does not contravene any provision of the constitution. The judges, without any statutory authority, could select one of their number for presiding judge.

TIMES OF HOLDING COURTS.—The provision in section 9, that the courts shall be held in each county at least once in every six months, is a compliance with section 7, article 6, of the constitution, which declares that "the times of holding the * * * district courts shall be fixed by law."

APPLICATION for *mandamus*.

The facts are stated in the opinion.

*J. H. MacMillan, S. D. King, Thomas Wells, H. F. Bartine,* and *Trenmor Coffin,* for Relator:

I.   The act of 1885 is unconstitutional and void, by reason of its title not complying, with the requirements of section 17, article 4, of the constitution. (*State* v. *Silver,* 9 Nev. 227; *State* v. *Ah Sam,* 15 Nev. 30;[1] *Sun Mutual Ins. Co.* v. *The Mayor,* 4 Sel. 253; *City of San Antonio* v. *Gould,* 34 Tex. 49; *Giddings* v. *City of San Antonio,* 47 Tex. 548; *Durkee* v. *Janesville,* 26 Wis. 697; *City of Tecumseh* v. *Phillips,* 5 Neb. 305; *White* v. *City of Lincoln,* 5 Neb. 505; *People* v. *Mahany,* 13 Mich. 494; *People* v. *Hill,* 35 N. Y. 449; *People* v. *O'Brien,* 38 N. Y. 193; *Matter of Van Antwerp,* 56 N. Y. 261; *Boyd* v. *State,* 53 Ala. 601; *People* v. *Institution,* 71 Ill. 229; *Ex parte Connor,* 51 Ga. 571; *People* v. *Brooklyn,* 13 Abb. Pr., N. S., 121; *People* v. *Com.,* 53 Barb. 70; *Martin* v. *Broach,* 6 Ga. 21; *Board of Ed.* v. *Barlow,* 49 Ga.

1   37 Am. Rep. 454.

241; *Mewherter* v. *Price,* 11 Ind. 199; *Cutlip* v. *Sheriff,* 3 W. Va. 588; *State* v. *Harrison,* 11 La. Ann. 722; *Dorsey's Appeal,* 72 Pa. St. 192; *Walker* v. *State,* 49 Ala. 329; *People* v. *Denahy,* 20 Mich. 349; *Weaver* v. *Lapsley,* 43 Ala. 224; *Breswick* v. *Mayor,* 51 Ga. 639; *People* v. *Parks,* 58 Cal. 624; *People* v. *Supervisors,* 43 N. Y. 10; *People* v. *Allen,* 42 N. Y. 417; *Davis* v. *State,* 7 Md. 151; 61 Am. Dec. 333; *People* v. *Hall,* 8 Col. 485.)

II. The system of courts provided for in the act of 1885, being different from that prescribed in the constitution (sec. 5, art. 6), cannot stand. (Con. Deb. 231, 240, 648, 658, 674, 714, 718, 721, 813.) The debates of the constitutional convention will be referred to to interpret the true meaning of the constitution. (*Lewis* v. *Doron,* 5 Nev. 409; *State* v. *Com., ante,* 247; *People* v. *Capman,* 61 Cal. 266; *State* v. *Arrington,* 18 Nev. 418; *State* v. *Kinkead,* 14 Nev. 117; *Sherman* v. *Buick,* 32 Cal. 242.)

III. The entire act is a manifest attempt to evade article 6 of the constitution. It is not enough that an act should comply in form with the constitution; it must do so in substance. (*People* v. *Albertson,* 55 N. Y. 50; *People* v. *Allen,* 42 N. Y. 404; *People* v. *Potter,* 47 N. Y. 375; *Clarke* v. *Barnes,* 76 N. Y. 301; *Belleville R. R. Co.* v. *Gregory,* 15 Ill. 20; 58 Am. Dec. 589; *Taylor* v. *Chandler,* 9 Heisk. 374; *Hammett* v. *Phil.,* 65 Pa. St. 146;[1] *Walter* v. *Com.,* 88 Pa. St. 137;[2] *Rickart* v. *People,* 79 Ill. 85; *Marmont* v. *State,* 48 Ind. 21; *Com.* v. *Smith,* 102 Mass. 144; *State* v. *Mercer,* 32 Iowa, 405; *State* v. *Archer,* 45 Md. 33; *Com.* v. *Lane,* 113 Mass. 458;[3] *Holoman* v. *State,* 2 Tex. App. 610; *Randle* v. *State,* 42 Tex. 580.)

IV. Section 8 of the act is unconstitutional, because it prescribes as a condition precedent that the judges shall reside in certain specified towns in this state. (*State* v. *Williams,* 5 Wis. 308; 68 Am. Dec. 67; *State* v. *Lean,* 9 Wis. 283; *State* v. *Tuttle,* 53 Wis. 49; *Barker* v. *People,* 3 Cow. 686; 15 Am. Dec. 325.)

V. The act is in conflict with section 1, article 3, of the constitution. The fixing of the times of holding court is not one of the cases expressly directed or permitted to be exercised by the legislature. (*Burgoyne* v. *Supervisors,* 5 Cal. 20; *People* v. *Provines,* 34 Cal. 520; *Heinlan* v. *Sullivan,* 64 Cal. 378; *Smith* v. *Strother,* 68 Cal. 194; *Ex parte Shrader,* 33 Cal. 283; *People* v. *Town of Nevada,* 6 Cal. 143; *Colton* v. *Rossi,* 9 Cal. 599; *Supervisors,* 114 Mass. 247; *Auditor* v. *Santa Fe R. R. Co.,* 6 Kan. 500; *Dorsey* v. *Dorsey,* 37 Md. 64;[4] *Bennett, Petitioner,* 32

1 3 Am. Rep. 615.     2 32 Am. Rep. 429.     3 18 Am. Rep. 509.     4 11 Am. Rep. 528.

Me. 508; 54 Am. Dec. 602; *Dearing* v. *Bank of C.*, 5 Ga. 499; 48 Am. Dec. 304; *State* v. *Field*, 17 Mo. 529; 59 Am. Dec.-27ɔ; *Hayburn's Case*, 2 Dal. 409.)

*R. M. Clarke* and *R. H. Lindsay*, for Respondents:

I. The delicate office of declaring an act of the legislature unconstitutional and void should never be exercised unless there be a clear repugnance between the statute and the organic law.  (*Cohen* v. *Wright*, 22 Cal. 308; *People* v. *Burbank*, 12 Cal. 378; *People* v. *Judge*, 17 Cal. 547; *Fletcher* v. *Peck*, 6 Cranch, 128; *Darmouth Col.* v. *Woodward*, 4 Wheat. 625; *State* v *Kruttschnitt*, 4 Nev. 178; *Ash* v. *Parkinson*, 5 Nev. 15; *Clarke* v. *Irwin*, 5 Nev. 111; *Evans* v. *Job*, 8 Nev. 322; Sedg. Stat. and Con. Law, 592; *Livingston* v. *Moore*, 7 Pet. 469; *Falconer* v. *Campbell*, 2 McLean, 195; *Ogden* v. *Saunders*, 12 Wheat. 294; *Knox* v. *Lee*, 12 Wall. 457; *L. Co.* v. *Darlington*, 101 U. S. 410; *Com.* v. *Smith*, 4 Binn. 123; *Moore* v. *Houston*, 3 S. & R. 169; *C. D. & V. R. Co.* v. *Smith*, 62 Ill. 268; *Ex parte McCollum*, 1 Cow. 550; Cooley, Con. Lim. 218 et seq.)

II. Courts cannot declare a law void upon the ground that it is contrary to the spirit and policy of the constitution, unless it is at variance with some express or clearly implied provision of that instrument.  (*Cohen* v. *Wright*, 22 Cal. 294; *People* v. *Weller*, 11 Cal. 86; *Patterson* v. *Supervisors*, 13 Cal. 182; *Wynehamer* v. *People*, 13 N. Y. 431; *Cochran* v. *Van Surley*, 20 Wend. 383.[1])·

III. In the enactment of laws the legislature is supreme.  It has the power to pass any act not expressly inhibited by the letter or by the clear implication of the organic law.  (Desty's Cons. of Cal. 222 et seq.)  The legislature is the sold judge of the expediency of the law.  (*Ex parte Wall*, 48 Cal. 279.)

IV. The act is not in conflict with that provision of the constitution which provides that " each law  *  *  *  shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title " (*People* v. *Lawrence*, 36 Barb. 177; Cooley, Cons. Lim. 170 et seq.; *State* v. *Silver*, 9 Nev. 227; *Humboldt Co.* v. *Churchill Co.*, 6 Nev. 35; *White* v. *City of Lincoln*, 5 Neb. 516; *City of Jonesboro* v. *C. & St. L. R. Co.*, 110 U. S. 192; *Montclair* v. *Ramsdal*, 107 U. S. 147; *State* v. *Town of Union*, 33 N. J. L. 350; *People* v. *Mahaney*, 13 Mich. 481.)

[1] 32 Am. Dec. 570.

By the Court, HAWLEY, J.:

On the fifteenth of February, 1886, respondents issued a notice that an election would be held on Tuesday, the second day of November next, for state, county, and township officers, including "three district judges for the district of Nevada"; and refused, upon the demand of relator, to issue a notice for the election of " one district judge for the second judicial district of the state of Nevada, comprising Ormsby and Douglas counties." This proceeding was instituted in this court to procure a writ of *mandamus* to compel respondents to issue such a notice.

Is the act entitled " An act to redistrict the state of Nevada, prescribe the number and salaries of district judges, and fix the places of holding courts " (Stat. 1885, 60; Gen. Stat. 2485–2494) constitutional ? Is it within the power of the legislature to so redistrict the state as to make but one judicial district ? Did the framers of the constitution intend to place any restriction upon the power of the legislature to fix the number of judicial districts, or to prescribe the number of the district judges ?

1. The first and most important question is, whether sections 1, 2, and 3 are constitutional ? These sections read as follows: —

" Section 1. On and after the first Monday in January, A. D. 1887, the state of Nevada shall constitute one judicial district.

" Sec. 2. At the general election in the year 1886 there shall be elected three judges, who shall be judges of said district.

" Sec. 3. The district judges shall be elected by the qualified electors of the state of Nevada, and shall hold office for the term of four years from and after the first Monday of January next succeeding their election."

The constitution of this state declares that " the judicial power of this state shall be vested in the supreme court, district courts, and in justices of the peace." (Sec. 1, art. 6.) " The state is hereby divided into nine judicial districts. * * * The legislature may, however, provide by law for an alteration in the boundaries or divisions of the districts herein prescribed, and also for decreasing or diminishing the number of judicial districts and judges therein. * * * There shall be elected, at the general election which precedes the expiration of the term

of his predecessor, one district judge in each of the respective
judicial districts (except in the first district, as in this section
hereinafter provided).   The district judges shall be elected by
the qual.fied electors of their respective districts."   *    *    *
(Section 5.)   " The district courts in the several judicial dis-
tricts of this state shall have original jurisdiction in all cases
in equity.   *    *    *"   (Section 6.)

The framers of the constitution created a judicial system
which involved, for the time being, a division of the state into
judicial districts.   There is, therefore, no need of any extended
consideration of the meaning of the word "district" as used by
lexicographers and found in law dictionaries.   It will be ad-
mitted that the meaning of the words "district" and "districts,"
as applied to the judicial system thus created by the constitu-
tion, had reference to a part or portion of the state.   This must
be so because nine districts were expressly named.   But what
did the framers of the constitution mean by giving the legisla-
ture power to alter the boundaries or divisions of the districts
prescribed by the constitution, and to increase or diminish the
number of judicial districts, and the judges therein?   Is not
the whole subject-matter left to the wisdom of the legislature
to arrange, in such manner as the necessities of the people may
require?

The question, in so far as it relates to increasing or diminish-
ing the number of district judges, is settled by the decision of
this court in *State ex rel. Aude* v. *Kinkead,* 14 Nev. 117.
Is it not equally as evident that it was the intention of
the framers of the constitution to invest the legislature
with absolute power to arrange the number of judicial
districts, and, if necessary to meet the wants of the people,
to reduce the number to one?   True, the opinion in *State
ex. rel. Aude* v. *Kinkead* only discusses the question in
so far as it relates to the number of judges in Storey
County; but are not the provisions of the constitution as clear
in the one case as the other?   There is no prohibition upon the
power of the legislature to increase the number of judicial dis-
tricts.   Is there any restriction upon the power of the legisla-
ture to diminish the number of judicial districts?   There is no
express, and in our opinion no implied, provision to this
effect.   It is not apparent, from all the provisions of the judi-

cial department, that it was the intention of the framers of the constitution to leave the number of the judicial districts, and the number of judges, to be determined by succeeding legislatures? The members of the constitutional convention made a provisional arrangement to set the courts in motion so as to meet the then condition of affairs in this state; but at that time they realized the fact that the mining excitement, and the litigation arising therefrom, in Storey County, might cease; that other counties might, in the near future, be placed in the same condition, and have an increase or diminution in population and judicial business; that the population in this state being then nomadic, and hence uncertain, it might in the future become necessary to have the boundaries of the districts, as provisionally established, altered or changed, and the number of judicial districts and judges therein increased or diminished, so as to conform to the condition of existing affairs from time to time, and to be regulated by the amount of judicial business to be transacted in the various counties of the state. This could only be done, as it was done, by the adoption of a provision which would, without any restrictions or limitations, expressed or implied, give this power to the legislature. This is why they said, in plain terms, that, notwithstanding the provisional arrangements embodied in the constitution, and the language used to enforce the same, the legislature may, in the future, "provide by law for an alteration in the boundaries or divisions of the districts herein prescribed; and also for increasing or diminishing the number of judicial districts and judges therein."

The only limitation upon the legislative power in this respect is found in the clause that no "change shall take effect except in case of a vacancy, or the expiration of the term of an incumbent of the office." The change made by the act in question does not take effect until the expiration of the term of the present judges. It does not, therefore, violate this clause of the constitution. The clause that "the district judges shall be elected by the qualified electors of their respective districts" is not violated, if it be true that the legislature has the power to diminish the number of judicial districts to one. It is fair and reasonable to presume that the framers of the constitution, if they had intended to place any other restrictions upon the legislative power, would have used apt words to express such

in°ention, and inserted a provision to the effect that in no event should the number of districts be diminished to less than two, nor increased to more than the whole number of counties existing in the state.

In the constitution of some of the states the matter is definitely fixed without any power whatever in the legislature to change or alter the same in any respect; in others, the entire question is left to the legislature; but in a large majority of the states the power is given to the legislature to change, increase, or diminish the number of circuits or districts, and wherever any limitation upon this power exists, it is stated in clear and positive terms. Thus, the constitution of Alabama provides "that the state shall be divided into convenient circuits, and each circuit shall contain not less than three nor more than six counties." (Const. 1819.) In California it is provided that "the state shall be divided by the first legislature into a convenient number of districts, subject to such alteration from time to time as the public good may require." (Const. 1849.) In Iowa the state is divided into eleven districts, "and after the year 1860 the general assembly may reorganize the judicial districts, and increase or diminish the number of districts, or the number of judges of the said court, and may increase the number of judges of the supreme court; but such increase or diminution shall not be more than one district, or one judge of either court, at any one session." (Const. 1857.) In Kansas "the state shall be divided  *  *  * into three common pleas districts of compact territory, bounded by county lines, and as nearly equal in population as practicable." (Const. 1855.) This provision is taken from the constitution of Ohio of 1851. In Louisiana the constitution of 1845 provides that the legislature "shall divide the state into judicial districts, which shall remain unchanged for six years"; and that "the number of districts shall not be less than twelve nor more than twenty." In Mississippi "the state shall be divided into convenient districts, and each district shall contain not less than three nor more than twelve counties." (Const. 1832.) In New York "the state shall be divided into eight judicial districts, of which the city of New York shall be one; the others to be bounded by county lines, and to be compact and equal in proportion, as nearly as may be. There shall be four justices of the supreme court in each district, and as many more in the district composed of the

city of New York as may, from time to time, be authorized by
law; but not to exceed in the whole such number, in propor-
tion to its population, as shall be in conformity with the num-
ber of such judges in the residue of the state, in proportion to
its population." (Const. 1846.) In Pennsylvania "not more
than five counties shall at any time be included in one judicial
district." (Const. 1838.) In Oregon "the number of justices
and districts may be increased, but shall not exceed five until
the white population of the state shall amount to one hundred
thousand, and shall never exceed seven." (Const. 1857.)

These constitutions, and others of like import, were adopted
prior to our constitution, and it must be presumed that the
members of the constitutional convention had knowledge
thereof. The clause from the constitution of New York was
frequently referred to in the debates. In the light of this
history, how can it be said that the convention intended to
place any limitations, restrictions, or prohibitions upon the
power of the legislature to enact a law "increasing or dimin-
ishing the number of judicial districts and judges?" These
words were taken from the constitution of Iowa, and the
restrictions imposed by that constitution are omitted. There is
no express provision requiring the legislature of this state to
maintain " a convenient number of districts "; that the districts
shall be "of compact territory, bounded by county lines"; that
the districts "shall be as nearly equal in population as practica-
ble"; that each district "shall contain not less than three, nor
more than six," or any other number of counties; or any other
words which, by fair and reasonable interpretation, can be con-
strued as a limitation of power upon the legislature to do what
the constitution, in direct, plain, and express words, declared
it might do,—"diminish the number of judicial districts."
There is nothing in the debates of the constitutional convention
to which our attention has been called that indicates any inten-
tion upon the part of the framers of the constitution to prohibit
the legislature from reducing the number of judicial districts
to one.

It is contended on behalf of relator that although the lan-
guage of the constitution does not impose any restrictions in
positive terms, yet its spirit and true intent is violated by the
act in question by the implications which arise from the or-
dinary meaning of the plural words "district courts" and

"judicial districts." It is claimed that the term "district" is always used in the constitution "in the sense of a defined and segregated portion of the state." The result of this argument would be to give the legislature power to establish as many districts as it pleases; but no matter what condition the state may be in, or the amount of judicial business to be transacted therein, it cannot reduce the districts to less than two; that the legislature might, therefore, include all the counties in the state but one into a judicial district having one judge, and make the other county another judicial district, and it would be a compliance with the implied prohibition for which relator contends. Is not this too narrow a view to take of the various provisions of the constitution relating to the judicial department? Is it not placing too much stress upon the form and overlooking the substance of the constitutional provisions? This argument, based upon the meaning of the plural words, to quote the language of Beatty, C. J., "though elaborate and very ingenious, is still far from convincing. Its fundamental fault is, that it attempts, by the application of narrow and technical rules of statutory construction, to wrest the provisions of the constitution above quoted from their obvious meaning." (*State* v. *Kinkead, supra.*) It gives to the words "district courts" and "judicial districts" greater significance than the framers of the constitution intended they should have. The object was to establish courts with a defined jurisdiction,—such courts as would be necessary to transact the judicial business in the various counties of this state.

A court is a tribunal established for the administration of justice, and is composed of one or more persons, assembled under authority of law for the hearing and trial of causes, and the transaction of judicial business. "An organized body, with defined powers, meeting at certain times and places, for the hearing and decision of causes and other matters brought before it, and aided in this, its proper business, by its proper officers." (Abb. Law Dict.) It is true that the name given to the respective courts is usually selected with reference to its peculiar character; but it is not of such importance as to control, in any manner, its jurisdiction, power, or authority. The framers of the constitution of this state might have given any other name to the courts than that of "district." Most of the members of the constitutional convention came direct to this

state from California, where a system of numerous courts in the respective counties prevailed. There were district courts, and judicial districts composed of one or more counties. There were county courts, and court of sessions, in every county in that state. The prevailing idea of the members of the convention was to make such a provisional arrangement as would give to every county in this state a court; that if every county had a court, it would be unnecessary to provide for more than one court. The name " district courts " seems to have been selected because it was deemed to be a name of higher grade and greater dignity than county courts; but these courts, with the power and jurisdiction as given by the constitution, might, appropriately, have been called county courts, and the judge or judges thereof might have been elected to preside over such courts in one or more or all the counties, notwithstanding the fact that the term " county courts " is ordinarily given to courts confined to each county. The courts might have been called courts of common pleas, general courts, courts of appeal, or any other name which pleased the fancy of the members of the convention. It is the jurisdiction conferred upon the court that gives it its power and authority, and not its name. The name " supreme court," for instance, indicates that it is a court of the highest authority in the state, and so it is in this state; yet in New York this name is given to courts possessing similar jurisdiction to that given to the district courts in this state, and the name " court of appeals " is given to the highest court. In Texas, the name " court of appeals " is given to a court having appellate jurisdiction in criminal cases, and the name " supreme court " applied to the court having appellate jurisdiction in civil cases.

Instead of judicial districts, the framers of the constitution might have used the words " judicial courts," " judicial circuits," or " general courts, one, two, three," etc. The word " district " does not always mean a part or portion of a country, state, or territory. " Judicial districts are districts created for judicial purposes, for defining jurisdiction of courts, and distributing judicial business." (Abb. Law Dict.) " By successive extensions of meaning, this word has gradually lost its original and peculiar signification, and is now constantly used, in ordinary language, to denote *any* extent of territory for *any* purpose." (Burr. Law Dict.) " The circuit or territory within

which a person may be compelled to appear." (Rap. & L. Law Dict.) There is no such positive or implied meaning in the use of the words " district courts," "judicial districts," or "district," as would authorize us, in the absence of any express clause limiting the power given to the legislature, to declare that the several counties in this state could not, by a legislative act, be included in one judicial district.

The constitution deals with subjects which are intended to govern the people in their rights and privileges. In treating of the judicial department, it declares in what courts " the judicial power of this state shall be vested." It defines the jurisdiction and authority of these courts, and specifies the powers possessed by the judges. It is therefore of no moment that the plural words " judicial districts " were used. It is the courts with their jurisdiction and authority, and the powers and duties of the judges, as defined in the constitution, that are to be protected and preserved. Significance is to be given to this subject more than to the plural words, which were employed solely with reference to the provisional arrangement of districts as made in the constitution, without any intent upon the part of the framers of that instrument to control the power of the legislature in diminishing the number of districts.

Under the act of 1885, each county in this state will have a district court possessing the jurisdiction, power, and authority given to it by the constitution. The judges to be elected under this act will have precisely the same power and jurisdiction, in the transaction of judicial business, as is now possessed and exercised by the present district judges. The number of judicial districts has been changed from seven to one, and the judges are to be elected " by the qualified electors " of this district, which embraces all the counties in the state. We admit that "implied prohibitions, if they plainly exist in a constitution, have all the force of express prohibitions" (*State ex rel. Perry* v. *Arrington,* 18 Nev. 415); but when the fundamental law has not limited, either in direct terms or by necessary implication, the general powers conferred upon the legislature, we should not declare an act void solely upon the ground that it may be opposed " to a spirit supposed to pervade the constitution, but not expressed in words." (Cooley, Const. Lim. 208.) " To do so would be to arrogate the power of making the constitution what the court may think it ought to be, instead of simply

declaring what it is." (*Walker* v. *City of Cincinnati*, 21 Ohio St. 41.[1]) In whatever direction we approach the question, we are irresistibly led to the conclusion that the legislature has the absolute power to fix, by law, the number of judicial districts, and the number of judges therein, and that, in the exercise of this power, one district may be made of the entire state for the purpose of apportioning the judicial business to be transacted therein by the district judges.

2. Objection is made to the title of the act. It is argued that the act in question is in conflict with section 17 of article 4 of the constitution, which declares that "each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which shall be briefly expressed in the title." In discussing this provision of the constitution in *State* v. *Silver*, 9 Nev. 231, this court said: "Its design has frequently been declared to be the prevention of improper combinations to secure the passage of laws containing subjects having no necessary or proper relation, and which, as independent measures, could not be carried; and also, as-expressed by Judge Gardiner, in the case of the *Sun Mutual Ins. Co.* v. *Mayor*, 4 Seld. 253, 'that neither the members of the legislature nor the public should be misled by the title.' The construction placed upon the clause is, that the details of a legislative act need not be specifically stated in the title, but matter germane to the subject, and adapted to the accomplishment of the object in view, may properly be included."

Applying this doctrine to the case in hand, it seems clear to our minds that the objections urged by relator are not well founded. The act does not abolish the judicial districts of this state; it simply diminishes the number of districts. The word "redistrict" was not evasive of the subject of the act. It was not misleading. It called the attention of the legislature, and of the people, to the fact that it was proposed, by the act, to make a change in the judicial districts,—to district the state over again. It may be that the title of the act is not as "briefly expressed" as it might have been. It was unnecessary to state the details of the act in the title. "An act to redistrict the state" would have complied with the requirements of the constitution, and all matters that were necessary for the accomplishment of this object could have been included; but the additions made to this title are in no sense misleading. They relate to matters which are

germane to the subject of redistricting the state. The fact that some of the details were expressed in the title does not have the effect to prohibit the legislature from putting into the provisions of the act other details not named in the title, which were "germane to the subject, and adapted to the accomplishment of the object in view." The subject-matter of this act is entirely different, in all its bearings, from that mentioned in *State* v. *Bowers*, 14 Ind. 196, where the court held that the title limited the "application of the general subject to the particulars enumerated"; that "the specification in the title of the cases in which licenses are to be required entirely negatives the idea that the act itself extends beyond the cases enumerated"; and that the title "concerning licenses to vend foreign merchandise, to exhibit any caravan, menagerie, circus, rope and wire dancing, puppet show, and legerdemain," did not embrace concerts. The opinion in that case proceeds upon the theory that concerts were different exhibitions from any named in the title, and hence was not properly connected, in the sense meant by the constitution, with the subject of the license required in the cases specified in the title of the act. In that case there was no connection at all; here, all the provisions of the act are "properly connected" with the subject expressed in the title. The act has but one general object, that of redistricting the state. All the matters embraced in the act are adapted to secure this object. The act, in this respect, does not violate the provisions of the constitution. (*State* v. *Ah Sam*, 15 Nev. 32;[1] *White* v. *City of Lincoln*, 5 Neb. 515; *People* v. *Mahaney*, 13 Mich. 495; *State* v. *County Judge*, 2 Iowa, 284; *Kurtz* v. *People*, 33 Mich. 282; *Morton* v. *Comptroller General*, 4 S. C. 445; *State* v. *Town of Union*, 33 N. J. L. 354; *Montclair* v. *Ramsdell*, 107 U. S. 155.)

3. Section 4 provides that "the district judges shall possess equal, co-extensive, and concurrent jurisdiction and power. They shall each have power to hold court in any county in this state. They shall each exercise and perform the powers, duties, and functions of the court, and of the judges thereof, and of judges at chambers. If the public business requires, each judge may try causes and transact judicial business in the same county at the same time." This section does not, by any reasonable interpretation, "give to the judge at chambers all of

1 37 Am. Rep. 454.

the powers, duties, and functions of the organized judicial tribunal termed a court," as claimed by relator. It does not in any manner invest the judges at chambers with any other power or authority than is now possessed by the district judges under the provisions of the constitution. Having made one district, and provided for the election of three judges therein, it was necessary to insert this section so as to give the judges, as was given in the constitution to the three judges in Storey County, "co-extensive and concurrent jurisdiction" throughout the entire state, and to make certain the point, which might otherwise be disputed, that although there were three judges in one district, it only required one judge to constitute a court. The objections to this section, urged by relator, are hypercritical, and wholly untenable.

4. The provision in section 5, that "the district court shall always be open for the transaction of business," does not abolish the existing "non-judicial days." It was not intended to have any such effect, and should not be so construed. But even such if an interpretation could be given to it, it would furnish no legal reason for declaring the act void, as the legislature has the power to create or abolish non-judicial days.

5. There is no constitutional objection to the method provided in section 6 for the payment of the salaries of the district judges. This section provides for the payment of the judges' salaries quarterly "out of the county treasuries of the counties." The fact that the money is to be paid into the state treasury, and is to be, by the state treasurer, paid to the judges "in monthly installments," does not violate the provisions of section 15, art. 6, of the constitution.

6. The provisions of section 7, which, "in addition to the salary provided for," allows to the district judges "the necessary expenses actually paid by them in traveling by public conveyance in going to and from the place of holding court," should not, in our opinion, be construed as opposed to section 10, art. 6, of the constitution, prohibiting judicial officers from receiving to their own use "any fees or perquisites of office"; but admitting, for the sake of argument, that it is susceptible of the construction claimed by relator, it would only affect "the payment of the traveling expenses" of the judges, and would not have the effect to destroy or render void the other provisions of the act. This clause is independent of and

disconnected with the subject-matter of the other provisions of the act, and if it were unconstitutional, it would not destroy the other portions of the act. (*Turner* v. *Fish*, *ante*, 265, and authorities there cited.)

7. The authority given to the judges by section 9, to "select one of their number for presiding judge," does not contravene any provision of the constitution. The judges, without this statutory provision, would have the inherent power to adopt such rules and regulations as might be necessary for the proper disposition of the judicial business to be transacted by them. They could select one of their number for presiding judge without the authority conferred by this section of the act, or could determine, by lot or other means, which judge should, at any given time, visit certain counties of the state, and hold court therein. The legislature has declared in what particular manner this shall be determined, thereby obviating any contention which might otherwise arise as to the best method to be adopted in order to secure an equal or fair distribution of work.

8. The provision in section 9 that the courts shall be held in each county at least once in every six months is a compliance with section 7, article 6, of the constitution, which declares that "the times of holding the * * * district courts shall be as fixed by law." The constitution does not require the law to specify when the terms of court shall be held. Its language is that "the terms of the district courts shall be held at the county seats of their respective counties." The law providing for the election of three judges, as specified in the notice given by respondents, must stand.

The times of holding courts in the respective counties is not, perhaps, as clearly expressed as it might have been. It may be that some difficulty or inconvenience upon the part of litigants or attorneys may occur on that account. There may, also, be other provisions which it will be difficult to carry out to the entire satisfaction of the people of this state. Much will, in this respect, depend upon the character and ability of the judges who may be elected. But whatever difficulties may arise, if any, in the enforcement of this law, it will be within the power of the legislature to remedy the defects, if any are found. Our duty ends in determining, as we have, that there are no constitutional objections to this law.

Upon the merits, without reference to the time when the election notice is required to be given, the writ of *mandamus* is denied.