[No. 1258.]

## THE STATE OF NEVADA EX REL. WELLS DRURY, RELATOR, v. J. F. HALLOCK, STATE CONTROLLER, RESPONDENT.

SALARIES OF STATE OFFICERS—TITLE OF ACT—AMENDED STATUTE—UNCONSTITUTIONAL.—"The act to amend an act reducing and regulating the salaries and compensation of certain state officers, justices of the supreme court, and attachés of the state government" (Stat. 1885, 99) is in violation of the provisions of the constitution requiring that each law shall embrace but one subject, which shall be briefly expressed in the title (art. 4, sec. 17), and is absolutely null and void.

APPLICATION for *mandamus.*

The facts are stated in the opinion.

*H. F. Bartine,* for Relator:

I. The act under which respondent seeks to justify is unconstitutional. It purports to amend something which did not exist. It involves the same principle as an attempt to amend an act that has already been amended or repealed. Such amendments have invariably been held inoperative and void. (*Draper* v. *Falley,* 33 Ind. 465; *Blakemore* v. *Dolan,* 50 Ind. 203; *Stingle* v. *Nevel,* 9 Or. 65; *Feibleman* v. *State,* 98 Ind. 516.)

II. No "subject" is expressed in the title as required by section 17, article 4, of the constitution.

The subject of an original or independent statute is the matter which it contains. The subject of an amendatory statute is the act amended. (*People* v. *Whitlock,* 92 N. Y. 196; *State* v. *Laughlin,* 75 Mo. 367; *State* v. *Bankers' Ass'n,* 23 Kan. 500; *Mayor* v. *State,* 30 Md. 118; *State* v. *Union,* 33 N. J. L. 350.)

The title is fatally defective in another view, because it fails to refer to the title of the act which it purports to amend. The title to which it does refer is no title at all. The attempted consideration of two distinct titles destroyed the identity of each. (*Feibleman* v. *State,* 98 Ind. 519.)

*James D. Torreyson,* for Respondent:

I. If the title of the original act is sufficient to include the words "justices of the supreme court," then the amendatory act contains nothing which is not germane in the original act,

and is therefore constitutional. (*State* v. *Bowers*, 14 Ind. 195; *Brandon* v. *State*, 16 Ind. 197; *Swartwout* v. *Michigan*, 24 Mich. 398; *State* v. *Elvins*, 3 Vroom, 362; *Stone* v. *Brown*, 54 Tex. 331.

II. The section of the constitution referred to should be given a liberal construction, and the court should be satisfied beyond a reasonable doubt of the unconstitutionality of the law. (*Com.* v. *Bailey*, 81 Ky. 396; *Louisiana* v. *Pillsbury*, 105 U. S. 278; *Stone* v. *Brown*, 54 Tex. 342.)

III. The words, "justices of the supreme court," may be stricken out of the title, and treated as surplusage. (*People* v. *Judge*, 39 Mich. 195; *Miller* v. *Hurford*, 13 Neb. 13; *State* v. *Ranson*, 73 Mo. 78.).

IV. Originally in the English courts the title was held to be no part of the act. (Cooley's Cons. Lim., secs. 143 et seq.; *Hadden* v. *Collector*, 5 Wall. 110.)

By the Court, HAWLEY, J.:

Relator is a member of the assembly of this state. He seeks, by the writ of *mandamus*, to compel respondent, as state controller, to draw a warrant in his favor at the rate of eight dollars per day for each day of service, as provided in section 7 of "An act reducing and regulating the salaries and compensation of certain state officers and attachés of the state government of Nevada," approved February 21, 1881. (Stat. 1881, 43; Gen. Stat. 2300.) Respondent refuses to issue any warrant to relator, except for "seven dollars per day for each day of service," as provided in section 5 of "An act to amend an act entitled 'An act reducing and regulating the salaries and compensation of certain state officers, *justices of the supreme court*, and attachés of the state government of Nevada,' approved February 21, 1881," approved March 12, 1885. (Stat. 1885, 99; Gen. Stat. 2308.)

By a reference to the original act of 1881 it will be observed that certain state officers are named. The justices of the supreme court are not included or named therein. The legislature in 1885, after amending sections 1, 2, 3, 4, and 7 of the act of 1881, added a supplemental section reducing the salary of the justices of the supreme court, and injected the words "justices of the supreme court" into the title of the act of 1881 in such a manner that any person unacquainted with the facts

would naturally suppose, upon examination of the amended act, that "justices of the supreme court" were included in the original act of 1881.

Is the amendatory act of 1885 constitutional? The constitution provides in plain, positive, and mandatory terms that " each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be revised or amended by reference to its title only, but in such case, the act as revised, or section as amended, shall be re-enacted and published at length." (Art. 4, sec. 17.)

In determining the question whether the amendatory act of 1885 violates any of the provisions in this section of the constitution, it is deemed advisable to call attention to the fact that the legislature of 1881 passed "An act fixing the salaries of the justices of the supreme court of the state of Nevada," approved February 19, 1881. (Stat. 1881, 43; Gen. Stat. 2291.) It therefore appears that the legislature deemed it proper and wise to legislate upon the subject of " fixing the salaries of the justices of the supreme court," independent of the subject of " reducing and regulating the salaries and compensation of certain state officers and attachés of the state government." Does it not necessarily follow, from the facts already stated, that the attempt of the legislature in 1885 to amend the title of the act of 1881, by inserting therein an additional subject, was in direct violation of the first clause of the section of the constitution above quoted? It may have been within the power of the legislature in 1881, as an original measure, to have adopted a title that would have been broad enough to include both classes of state officers in one act; but having adopted a limited title for each, and passed separate acts, it was not within the power of any subsequent legislature to amend the title of either act so as to include the matters legitimately pertaining to the other.

Under the provisions of the constitution, is it not made clear that the legislature of 1881, under the title " fixing the salaries of the justices of the supreme court," could not have embodied any provisions in that act relating to the salaries of any other state officers, because the title was limited to the subject therein named? Is it not equally as plain that the legislature of 1881, in passing the act " reducing and regulating the salaries and compensation of certain state officers," did not intend to

include justices of the supreme court, or any state officers than those named in the body of the act? If this be true, then does it not logically follow that, in amending the act of 1881, the legislature would have no power to include any class of state officers not named in the original act?

"As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title. They are vested with no dispensing power. The constitution has made the title the conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so." (Cooley, Const. Lim. 149.)

The manner and methods pursued in preparing the so-called amended act of 1885 are extremely reprehensible, and have always been universally condemned. The constitutional provisions were either overlooked or intentionally ignored. The legislature did not properly refer to the act " approved February 21, 1881." The title of that act is essentially different from the title of the act specified in the amended act. The constitution declares that "no law shall be revised or amended by reference to its title only." This provision does not authorize the legislature to dispense with a reference to the title of the act sought to be amended. It was intended by the framers of the constitution that, in the revision or amendment of a statute, " the title of the act to be amended should be referred to." (*Feibleman* v. *State,* 98 Ind. 520.)

The proper method of complying with this clause of the constitution would be to correctly copy the title of the act referred to. If any other course is pursued, it might lead to endless confusion and uncertainty, which, among other things, the constitutional provision intended to prevent. This is made plain by reading the entire section of the constitution. In order to comply with its provisions not only must the title of the act to be amended be referred to, but the sections " as amended shall. be re-enacted and published at length."

If the title of the original act had been correctly copied, leaving out "justices of the supreme court," then section 8 of the amended act of 1885, which relates exclusively to the salary of the justices of the supreme court, would have to be declared unconstitutional, because the title of the original act only embraced *certain* state officers and attachés of the state government, and, as before stated, the justices of the supreme court were not named in the act. We have already shown that an amendatory act cannot include any other subject than that embraced in the act to be amended, and " matter properly connected therewith." Therefore, if the words "justices of the supreme court " could be treated as surplusage, and stricken out of the title of the amended act, it would be our duty to declare all of the provisions of the amended act relating to the salary and compensation of the state officers and attachés of the state government named in the act of 1881 valid, and section 8, relating to the salary of the justices of the supreme court, void. (*State* v. *Bankers' Ass'n*, 23 Kan. 501; *Burlington & M. R. R. Co.* v. *Saunders Co.*, 9 Neb. 511; *Wisner* v. *Mayor of Monroe*, 25 La. Ann. 598; *People* v. *Briggs*, 50 N. Y. 565; *Chiles* v. *Monroe*, 4 Metc. (Ky.) 75; *State* v. *Persinger*, 76 Mo. 347; *Stone* v. *Brown*, 54 Tex. 340.)

The substance of all the authorities which discuss the effect of the law in cases where the act is broader than the title is thus clearly stated by Judge Cooley: "But, if the act is broader than the title, it may happen that one part of it can stand because indicated by the title, while as to the object not indicated it must fail." (Cooley, Const. Lim. 148.)

If the provisions of the amendatory act of 1885 only related to matters that were included in the original act, then we would be authorized to treat the words "justices of the supreme court " as surplusage, and exclude them from the title; because in such a case it would clearly appear that no one had been, or could be, misled by the improper insertion of the words in the title. Mistakes and errors in the use of words, which are not calculated to mislead as to the subject of the act, will be regarded by the courts as mere clerical mistakes, in no wise impairing the validity of the law. (*School Directors Dist. No. 5* v. *School Directors Dist. No. 10*, 73 Ill. 249; *Plummer* v. *People*, 74 Ill. 363; *City of Winona* v. *Whipple*, 24 Minn. 65; *State* v. *Lake City*, 25 Minn. 404; *State* v. *Elvins*, 32 N. J.

Law, 362; *Comstock* v. *Judge of Superior Court*, 39 Mich. 196; *Wilson* v. *Spaulding*, 16 Fed. Rep. 304; *Walnut* v. *Wade*, 103 U. S. 683.)

But this is a different case. In the amended act under consideration, it is manifest that the words "justices of the supreme court" did not creep into the title innocently, or by any mere clerical mistake or inadvertency. They were inserted purposely and designedly. It was a premeditated attempt to embody in one act amendments to two different and distinct acts, relating to different subjects, by adding to the title of one act the subject-matter of the other, so that one might be used as an inducement for the passage of the other. Its tendency and evident design was to impose upon the members of the legislature by injecting the words "justices of the supreme court" into the middle of the title in such a manner as to lead them to believe that the words were embodied in the title of the original act, and was a part of the statute sought to be amended; whereas, the truth was that the act fixing the salary of justices of the supreme court had no connection whatever with it. One of the objects of the constitutional provision was to avoid and prevent just such legislation as was attempted to be accomplished in this case.

"The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislature and dangerous to the state. * * * The framers of the constitution meant to put an end to legislation of the vicious character referred to, which was little less than a fraud upon the public, and to require that in every case the proposed measure should stand upon its own merits, and that the legislature should be fairly satisfied of its design when required to pass upon it." (*People* v. *Mahaney*, 13 Mich. 494.)

"The object of this constitutional provision is obvious and highly commendable. A practice had crept into our system of legislation of engrafting upon subjects of great public benefit and importance, for local or selfish purposes, foreign and often pernicious matters; and rather than endanger the main subject, or for the purpose of securing new strength for it, members were often induced to sanction and actually vote for such pro-

visions, which, if they were offered as independent subjects, would never have received their support. In this way, the people of our state have been frequently inflicted with evil and injurious legislation. * * * To remedy such and similar evils was this provision inserted into the constitution, and we think wisely inserted." (*Davis* v. *State,* 7 Md. 160.[1])

All the authorities upon this subject are substantially to the same effect. (*State* v. *Silver,* 9 Nev. 231; *State ex rel. Coffin* v. *County Com.,-ante,* 332; *Sun Mut. Ins. Co.* v. *Mayor of New York,* 8 N. Y. 253; *Stewart* v. *Father Matthew Soc.,* 41 Mich. 72; *State* v. *McCracken,* 42 Tex. 385; *Walker* v. *Caldwell,* 4 La. Ann. 297; *State* v. *Town of Union,* 33 N. J. L. 352; *State* v. *Ransom,* 73 Mo. 78; Cooley, Cons. Lim. 142, and authorities there cited.)

In *State* v. *Lancaster Co.,* 17 Neb. 85, where the legislature in the title of an amended act also inserted an additional object to repeal other provisions of the statute having no relation to subjects embraced in the original act, the court declared that the attempted repeal was a nullity, but held the other portions of the act valid upon the ground "that the invalid portion did not have, and could not have had, the effect to induce the legislature to pass the amendment in question"; but, in this connection, the court expressly declared that the rule would be different in cases "where it is impossible, *from an inspection of the act itself,* to determine which part of the act is void and which valid."

In the present case it is evident that one portion of the act was specially designed as an inducement to pass the other, and it is impossible for us to determine, from an inspection of the act itself which portion, if either, would have passed without the other. It therefore becomes our plain and imperative duty to declare the entire amendatory act of 1885 absolutely null and void.

"If the title to the act actually indicates, and the act itself actually embraces, two distinct objects, when the constitution says it shall embrace but one, the whole act must be treated as void, from the manifest impossibility in the court choosing between the two, and holding the act valid as to the one and void as to the other." (Cooley, Const. Lim. 148. See also *Davis* v. *State, supra; People* v. *Hills,* 35 N. Y. 452.)

Let the writ issue as prayed for in relator's petition.

[1]  61 Am. Dec. 331.