[No. 1304.]

## Ex-parte A. LIVINGSTON.

CONSTITUTIONAL LAW—TITLE OF ACT EMBRACES BUT ONE SUBJECT.— The act entitled "An act fixing the time for the opening and closing of saloons and gaming-houses " (Stat. 1889, 71) is not repugnant to the constitutional provision that each act " shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title." (Art. 4, Sec. 17.)

IDEM—MEANING OF "SALOON."—The word "saloon" clearly refers only to places where intoxicating liquors are kept, and is not misleading.

IDEM--LOCAL AND SPECIAL LAWS.—The act is not local or special in the sense of the constitutional restrictions upon that subject. (Const. Art. IV. Sec. 20.)

APPLICATION for *habeas corpus.*

The facts are stated in the opinion.

*W. E. F. Deal,* for Petitioner.

I. The act under which petitioner was convicted is unconstitutional. It embraces more than one subject, viz., the subject of selling liquors, and the subject of gambling and games of chance, and the subject of the duties and punishment of peace officers. (*Davis* v. *State,* 7 Md. 151; 61 Am. Dec. 331; Cool. Con. Lim., Sec. 173.) The act applies to grocery stores and restaurants where liquor is sold.

II. The true and actual subject or object of the act must be expressed in the title. (*People* v. *Hills,* 35 N. Y. 453; *State* v. *Hallock,* 19 Nev. 388–9; *Durkee* v. *City of Janesville,* 26 Wis. 701; Cool. Con. Lim. 172, 183.) The title of this act does not express the subject of the act.

III. The word "saloon" is a general name given to all places of refreshment, and must be qualified by some other word to indicate the particular character of the saloon. (*State* v. *Barr,* 39 Conn. 41; *Kitson* v. *Mayor, etc.,* 26 Mich. 327; *State* v. *Mansker,* 36 Tex. 364.)

*John F. Alexander* and *J. D. Torreyson,* for the State.

I. The act in question does not violate any of the provisions of art. 4, sec. 17 of the constitution. (*State* v. *Atherton,* 19 Nev. 342; *State* v. *Ah Sam,* 15 Nev. 27; 37 Am. Dec. 454; *Ex-parte Andrews,* 18 Cal. 679; *People* v. *Briggs,* 50 N. Y. 553; *Davis* v. *State,* 7 Md. 151; 61 Am. Dec. 331; *Klein* v. *Kinkead,* 16 Nev. 201; *State* v. *Ah Chew,* 16 Nev. 50; 40 Am. Rep. 488; *Butler* v. *Chambers,* 36 Minn. 69; 1 Am. St. Rep. 638; Black Const. Proh. Secs. 61–67.)

II. The act in question is not in violation of art. 4, sec. 20, of the constitution. It is neither local nor special. It is general and applicable to all towns and counties within the state, and intended to establish a uniform system for the regulation of the traffic in spirituous liquors and the carrying on of gambling. (*Ex parte Smith & Keating,* 38 Cal. 702; *Ex-parte Andrews,* 18 Cal. 679; *Ex-parte Burke,* 59 Cal. 6; *Ex-parte Koser,* 60 Cal. 177; *Ex-parte Lichtenstein,* 67 Cal. 359; 56 Am. Rep. 713.)

By the Court, Hawley, C. J.:

Petitioner, having been arrested for a violation of the "act fixing the time for the opening and closing of saloons and gaming-

houses," (Stat. 1889, 71,) asks to be discharged from custody, upon the ground that said act is unconstitutional. The authority of the legislature, under the police power of the state, to pass acts regulating or prohibiting the sale of spirituous liquors, or regulating or suppressing gambling, is unquestioned. (*State* v. *Ah Chew*, 16 Nev. 55; 40 Am. Rep. 488; *State* v. *Donovan*, 20 Nev. 75.) This authority is expressly admitted by counsel for petitioner. In fact, there cannot now be any question, if any there ever was, that it is the duty of courts to uphold and sustain such acts, provided they have been adopted by the legislature in the mode required by the constitution. (Cool. Con. Lim. 7.5, 728; Black, Const. Prohib., Sec. 61, *et seq.*) This power and authority has been recognized and sanctioned by the courts of every state in the Union where the question has been presented, and sustained by the Supreme Court of the United States.

It is argued by counsel for petitioner that the act in question was passed in violation of section 17, article 4, of the constitution of this state, which provides that "each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title;" and this argument is sought to be maintained upon the theory that the act embraces "two distinct subjects and matters—the liquor business and gambling." Is this position correct? Is it sustained by any of the adjudicated cases? Does the act embrace more than one subject? Counsel cites and relies upon *State* v. *Silver*, 9 Nev. 227, and *State* v. *Hallock*, 19 Nev. 384. In *State* v. *Silver*, the legislature of this state by an act entitled "An act to regulate marks and brands," inserted a provision for the punishment of the unlawful killing of stock. This court, in discussing the object of the constitutional provision, (section 17, article 4) said that "the subject of unlawful killing of stock * * * . bears no proper relation to that of the regulation of marks and brands; and a statute entitled 'An act to regulate marks and brands' gives no intimation by its title of a provision for the punishment of the unlawful killing of stock. So much of the statute, therefore, as relates to the killing of stock we consider unconstitutional." It will readily be seen by this quotation that the principle announced in that case does not support the theory contended for by petitioner. If the title to the act in question had been "An act fixing the time of opening and closing gaming-houses," and provisions had been

inserted in the act fixing the time of opening and closing liquor
saloons, then the question, as presented in *State* v. *Silver*, would
have been raised. •In *State* v. *Hallock*, the legislature sought to
amend an act by adding to its title the subject of another,
independent act. We said, among other things, that it might
have been within the power of the legislature, as an original
measure, to have adopted a title that would have been broad
enough to include both classes set forth in the title of the
amendatory act; "but, having adopted a limited title for
each, and passed separate acts, it was not within the power
of any subsequent legislature to amend the title of either
act so as to include the matters legitimately pertaining to the
other." The facts in that case were entirely dissimilar from
the facts in this case. The object of the constitutional provision
was to avoid and prevent just such legislation as was attempted
to be accomplished in the cases we have referred to. (See
authorities cited in the latter case, 19 Nev. 389, 390.) In exam-
ining the act under consideration, and reviewing the authorities
cited by the respective counsel, and other decided cases, we are
irresistibly led to the conclusion that this act embraces but one
subject, which subject is briefly and correctly expressed in the
title. When the legislature had this matter under consideration
it is apparent that the members, as a question of public policy,
evidently believed it to be in the interest of public morals, and
necessary for the protection of the people and the good order of
society, to restrict and limit the time in which certain kinds of
licensed business should be conducted and carried on in this
state. The subject considered by them was that of closing cer-
tain kinds of business during certain hours. This is the subject,
and the only subject embraced by the act. The legislature had the
power to declare what kinds of business should be closed, and
how long they should be compelled to remain closed. All sorts
of business coming within the class that can be regulated under
the police power of the state could properly be embraced in one
act, under an appropriate title. The title might be general, as
"An act to protect public morals;" or it might, as the title of
this act does, designate the different kinds of business to be
restricted. If the title was general in its terms, then the body
of the act could designate the kinds of business to be closed.
If the title designated by name the kinds of business to be
closed, then the act would necessarily be limited to the classes

included in the title of the act. (*State* v. *Atherton*, 19 Nev. 345.) In either case the legislature could include different kinds of business, which bear no relation to each other, except that they all come within the power of the legislature to regulate, restrict or abolish.

The precise question relied upon and urged by petitioner was, among others, presented to the supreme court of New Jersey in *Grover* v. *Trustees, etc.*, where it was contended that the act there under consideration embraced two objects, viz., the licensing and regulation of boats, hacks, and other vehicles, and the licensing, regulating, and restraining of the manufacture and sale of liquor; things having no relation to each other. The court said that this contention " is wholly without support. The power to license and regulate boats, hacks, and other vehicles used in the transportation of passengers and merchandise, and the power to license, regulate, and prohibit the manufacture or sale of liquor, are of the class of police powers usually granted to a municipal government. They are powers appropriate for the maintenance of order, and have relation to the same common subject—the peace and good government of the municipality. We have no doubt that the legislature, under a title which shall conform to the constitutional requirement, may pass an act which shall embrace in it both these powers." (45 N. J. Law, 401. See also *State* v. *Hallock, supra; Cherokee Co.* v. *State*, 36 Kan. 337; *State* v. *Town of Union*, 33 N. J. Law, 354; *Montclair* v. *Ramsdell*, 107 U. S. 155; *Blood* v. *Mercelliott*, 53 Pa. St. 393; *Block* v. *State*, 66 Ala. 495.) This must be true. To hold otherwise would lead to absurd results, and have a tendency to clog the wheels of necessary legislation. Under the title of " An act to provide revenue for the support of the government of the state," all classes of property, and all kinds of business bearing no proper relation to each other, are included under the power of taxation, because they are included within the subject embraced by the act, of raising revenue for the support of the state government. Acts incorporating cities by name are sufficient to authorize the legislature to put into the body of such acts everything necessary to carry out the objects of the incorporation. Under the general title of such incorporations, sections might be inserted in the body of the act prohibiting the sale of liquor and prohibiting gambling within the corporate limits. It seems to us that it might with

just as much force be said in such cases that such acts embraced different subjects as in the case in hand; yet it is admitted that acts of the character mentioned have been universally sustained. So in regard to acts concerning public improvements. The legislature may put into one act the necessary provisions concerning the erection of a court-house and jail, and also the building of certain bridges and construction of highways, although there is no relation between a court-house and jail, and bridges and highways, save and except the necessity or propriety which exists in constructing such buildings, bridges and highways, under the subject of internal improvements.

The general appropriation acts furnish a forcible illustration of the principle we are discussing. Under one act, appropriations are made for the salaries of officers and for repairs to a state penitentiary, not because the salaries of the state officers bear any particular relation to the improvements to be made on the state penitentiary, but because both these appropriations are necessary to be provided for in order to carry on the affairs of the state government. The supreme court of South Carolina, in *State ex rel.* v. *Chester*, in construing a similar constitutional provision with reference to a statute providing a "local option" for the incorporated towns of that state, said: "This section" of the constitution "no doubt contains a wise provision, and if properly observed would tend greatly to prevent confusion and doubt as to the exact meaning and intent of legislative enactments, and to this end it should be enforced by the courts in all proper cases, due care being exercised lest a too strict construction might defeat its very object and purpose by clogging legislation and loading down our statute books with numberless separate acts wholly unnecessary to the end designed. By such a construction few matters could become the subject of legislation in a single act. * * * Take, for example, the general appropriation act. Every section, in fact almost every line, in a strict sense, refers to a different subject, as different appropriations, and for different purposes, are certainly made, and if each of these had to be in a separate act it would entail infinite confusion in a matter of the highest importance to the state. It cannot be that the framers of the constitution ever intended that such a construction should be placed upon this section." (18 S. C. 466.)

The subject of the act being to fix the hours of opening and

closing saloons and gaming-houses, all the provisions of the act prohibiting the selling or · giving away any spirituous liquors, and prohibiting the conducting of gambling and games of chance within the hours mentioned, as well as the penalty prescribed against peace officers in the third section of the act, being necessary to effect and enforce the object of the law, must be considered in their entirety, as a unit, as "matters properly connected with the enforcement of the law and the attainment of the contemplated object." (State v. Silver, supra.) Where the subject of legislation is of a general character, all matters reasonably connected with it, which are appropriate to accomplish or facilitate the object of the act, may be embraced in it without infringing the constitutional interdict which prohibits the intermixing of such things as have no proper relation to each other. (In re Report etc., 49 N. J. L. 448; Klein v. Kinkead, 16 Nev. 202; People v. Briggs, 50 N. Y. 564; Board etc. v. Dwight, 101 N. Y. 11; Bergen Co. Sav. Bk. v. Town of Union, 44 N. J. L. 602; Potwin v. Johnson, 108 Ill. 77; Golden Canal Co. v. Bright, 8 Col. 147; Carter Co. v. Sinton, 120 U. S. 522; Jonesboro v. Cairo etc. R. R. Co., 110 U. S. 199; Cool. Con. Lim. 175, and the authorities there cited.)

The provisions of the act under consideration do not come within any of the evils intended to be remedied by the constitutional provision. The subject of the act is briefly and correctly expressed in the title. The title called the attention of the members of the legislature to the subject embraced in the act. It is not in any respect misleading. The subject of the act is not in any manner disguised or concealed by the title, as it was in State v. Silver and State v. Hallock, supra. Neither the members of the legislature nor the people of the state could be misled thereby. All matters contained in the body of the act are germane to the subject expressed in the title.

The criticism of counsel touching the various meanings applied to the word "saloon" has no application to the particular facts of this case. It is true that the word " saloon" has many different meanings. It might in certain cases be used to designate "a spacious and elegant apartment for the reception of company, or for works of art; * * * to halls for public entertainments or amusements; also, to apartments for specific public uses, as the saloon of a steamboat," (Webst. Dict.;) but the meaning of the term or word as used by the legislature is well

understood in this state. Its meaning is made plain and clear by reference to the provisions in the body of the act: "It shall be unlawful for any person or persons, firm or corporation, engaged in the *business of selling any kind or kinds of spirituous or malt liquors by the glass or drink,* or engaged in carrying on or conducting any kind or character of gambling or games of chance, to open such place of business for the sale of such liquors, or for the prosecution of such games, at an earlier hour than six o'clock in the morning of each or any day, and no such person or persons, firm or corporation, shall sell or give away any such liquors, or continue or allow the continuance of any such games, in or about their respective places of business after the hour of 12 o'clock P. M. of each or any day, and all such places of business, excepting hotels, shall be closed between the hours of midnight and the hour of six o'clock the next morning of each and every day."

It is set forth in the complaint upon which petitioner was arrested, that he was "engaged in the business of selling spirituous liquors by the drink," and that he did, at his place of business, known as Ozark saloon, unlawfully sell spirituous liquors after the hour of twelve o'clock P. M. of the day therein named. Any one reading the provisions of the act will see at a glance that the business in which petitioner is engaged is one of the character intended to be reached by the legislature. The provisions of the act we have italicized show just what kind of saloons must be kept closed. It is therefore apparent that the word "saloon" in the title of this act is not misleading. The truth is that the character of the place to be closed, whether a saloon or gaming-house, is to be determined by the kind of business transacted therein. In this respect we are of the opinion that the act is not, and was not intended to be, any broader than the title.

The other objections urged by petitioner are wholly untenable. The act is not local or special, in the sense of the constitutional restriction upon the subject. It applies to all saloons and gaming - houses throughout the state which come within the class mentioned in the act, and as to such classes and places of business it is of uniform operation throughout the state. Petitioner is remanded into custody.