[No. 1432.]

THE STATE OF NEVADA, ex rel. F. H. NORCROSS, as District Attorney of Washoe County, Relator; v. THE BOARD OF COUNTY COMMISSIONERS OF WASHOE COUNTY, Respondent.

(Syllabus by BIGELOW, C. J.)

1—STATUTES 1895, 107, UNCONSTITUTIONAL.—The act of March 16, 1895 (Stats. 1895, 107), to amend an act concerning the purchase and

preservation of newspapers, in so far as it attempts to regulate the matter of legal advertising and printing, is in conflict with the provisions of the constitution (art. IV., sec. 17), requiring that each law shall embrace but one subject, which shall be briefly expressed in the title.

2—CONSTITUTION—ART. IV., SEC. 17 OF, DISCUSSED, AND INTENT OF DETERMINED.—The purpose of that provision of the constitution was to prevent the combination in one act of incongruous and distinct subjects, and also imposition upon the members of the legislature and the public, by covering up, under innocent titles, vicious and harmful provisions.

3—LEGISLATIVE ACT—NOT BROADER THAN TITLE.—Where, by the title, the subject of an act is restricted to a certain purpose, the purview of the act cannot be extended to other purposes not indicated in the title. The act can be no broader than the subject expressed in the title.

4—CONSTITUTION—LIBERALLY CONSTRUED.—While this clause of the constitution should be liberally construed, to the end that there may be no unnecessary hampering of legislation, this liberal construction should not go to the extent of nullifying the constitution. Where an act clearly embraces two distinct and independent subjects, or the real subject of the act is not expressed in the title, it is the duty of the courts to declare the act void.

ORIGINAL PROCEEDING to obtain writ of *certiorari*.

The facts sufficiently appear in the opinion.

*F. H. Norcross*, in *pro. per.*, and *Alfred Chartz, William Webster* and *Robert M. Clarke*, for Relator:

The facts of this case were presented before the supreme court on oral argument. The question before the court is whether the act entitled "An act to amend an act entitled 'An act for the purchase and preservation of public newspapers printed and published in the several counties of this state,' approved February 1, 1865," is constitutional or not. Four objections are raised against the constitutionality of the amendatory act; that more than one subject is embraced in the amendatory act; that the title does not express the subject; that the amendatory act is not germane to the original act, and that it interferes with the duties of judicial officers. But the fact is this: Only one subject is embraced in the amendatory act, *i. e.*, a means of giving the public better and more certain legal notice, and the only fault to be found (a purely technical fault) is that the recorder and the commissioners are used by the legislature to accomplish that single object, instead of either the recorder or the board

of commissioners. Again, the mandatory wording of the act makes it the act of the legislature itself.

The amendatory act has a general purpose or object, a better use of the paper to be subscribed for and a better notice to the public of all legal advertising, and all matters fairly and reasonably connected with that object, and all necessary measures which will facilitate its accomplishment, are proper to be incorporated in the act, and are germane to its title, and the general purposes of sec. 17, art. IV. of the constitution is accomplished when the law has but one general object, which is fairly indicated by its title. (*Klein* v. *Kinkead*, 16 Nev. 194; Cooley's Const Lim. 143, 146, and a long list of authorities quoted in *Klein* v. *Kinkead, supra*, 198.)

The truth is that neither the original nor the amendatory act fully expresses its object, but the real object is fairly implied and deducible from the title, and with absolute certainty. With the provisions of law and the common knowledge of the people that certain newspapers are the official newspapers of the counties wherein published, in which must appear all legal notices, how could the district judges obey the law by naming any other paper in which to publish legal notices? is a question which fully answers the objection raised on that point. This court will endeavor to uphold the act, if it can do so within the constitution. (*State, ex rel. Lewis,* v. *Doran*, 5 Nev. 399; *State, ex rel. Ash* v. *Parkinson*, 4 Nev. 17; *State, ex. rel. Clark*, v. *Irwin*, 5 Nev. 111; *Humboldt Co.* v. *Churchill Co.*, 6 Nev. 30.) If the language of the act in question admits of two constructions, this court will adopt the construction which will save the act. (*V. & T. R. R. Co.* v. *Henry*, 8 Nev. 165.) The statute must be sustained if, after striking out any unconstitutional portions, there is enough left that can be executed wholly and independently of that which is rejected. (8 Nev. 322; 9 Nev. 325; 11 Nev. 128; 3 Nev. 173.) The court, in construing the amendatory act of 1895, will look at the mischief of the old law, and the object of the legislature in amending it, and the benefit sought to be obtained. (*Odd Fellows' Bank* v. *Quillen*, 11 Nev. 109; *State* v. *Ross*, 20 Nev. 61; *State* v. *Dayton and V. & T. R. R. Co.*, 10 Nev. 155; *Brown* v. *Davis*, 1 Nev. 409.)

The constitutional provision that each law shall embrace

but one subject, which shall be briefly expressed in the title, is mandatory, but should be liberally construed. (*State* v. *Ah Sam*, 15 Nev. 27.)

*Torreyson & Summerfield*, for Respondent:

The act of the legislature in controversy is an attempt of the legislative and executive departments by statute to confer a judicial function, to wit, the control of legal advertising, upon an executive and merely ministerial officer, to wit, the county recorder, and is violation of sec. 1, art. III. of the constitution of Nevada; also of sec. 17, art. IV., in the following particulars: (1) It contains three distinct and independent subjects, *viz.:* (*a*) the subscription for newspapers by county recorder; (*b*) the designation of such newspapers by boards of county commissioners as the official papers of counties; (*c*) the regulation and control of legal advertising. (2) The amendatory matter contained in the act is not matter properly connected with the subject expressed in its title, or in the title of the original act which it purports to amend. (3) The subject of said act is not briefly, or at all, expressed in its title.

This section of the constitution is mandatory. (*State* v. *Hallock*, 19 Nev. 386; *State* v. *Ah Sam*, 15 Nev. 27; *State* v. *Silver*, 9 Nev. 227.)

Under the general title of "acts to amend" other acts, no matter can be incorporated by the amendment which would not have been properly connected with the subject of the original acts or would not have been germane to such subject. (19 Nev. 388; 10 Neb. 476; 11 Neb. 377; 9 Neb. 507; 6 Neb. 474; 17 Neb. 85; *In re White*, 33 Neb. 812; *Trumble* v. *Trumble*, 55 N. W. 869; 74 Cal. 553; 41 Mich. 67; 76 Mich. 579; 77 Mich. 203; 23 Am. & Eng. Ency. 268, and authorities cited.)

Where the title of an act is restrictive the courts will not seek to extend its scope so as to embrace subject matter in the body of the act which might be held to be germane to a general title. (*Ex parte Hewlett*, 22 Nev. 333; *State* v. *Hallock*, 19 Nev. 384; Cooley's Const. Lim. 149; *Ex parte Livingston*, 20 Nev. 282.)

An act will not be so construed as to extend its operations beyond the subject expressed in its title and matter properly

connected therewith.   In other words, the act must not be broader than the title.   (9 Nev. 227; 19. Nev. 384; 49 Mich. 459; Sutherland on Stat. Constr., sec. 87.)

One of the principal objects of the mandatory provision of sec. 17, art. IV. Const. Nevada, was to prevent the perpetration of fraud, or surprise, upon the members of the legislature and the people by requiring the title of laws to be so worded as to impart some degree of notice as to the character of their contents.   (*State* v. *Commrs.*, 21 Nev. 235; *State* v. *Hallock*, 19 Nev. 389; *Waldee* v. *Cummings*, 86 Mich. 402; *People* v. *Maheney*, 13 Mich. 494; *School Dist.* v. *Hall*, 113 U. S. 135.)   [Here follows argument on the application of above authorities.]

By the Court, BIGELOW, C. J.:

Original application for a writ of *certiorari*.   By Stats. 1895, p. 107, the legislature enacted a law entitled "An act to amend an act entitled 'An act for the purchase and preservation of public newspapers printed and published in the several counties of this state,' approved February 1, 1865." The body of the act is as follows:   "Section 1. The recorders of the several counties of this state are hereby authorized and required to subscribe for one newspaper printed and published at the county seat of each county of the state, and the board of county commissioners of the respective counties shall designate the paper so subscribed for as the official paper of the county, wherein all legal advertising and printing shall be done; *provided*, the rate for such work shall not exceed the rate now established by law.   No paper shall be so subscribed for and designated unless it shall have been established for at least one year, and is printed and published in its entirety at its place of establishment."   Pursuant to this statute the county recorder of Washoe county, on the 3d day of May, 1895, subscribed for the Nevada State Journal, a newspaper coming within the terms of the act, and notified the board of his action.   June 3, 1895, the respondents, as such board, made the following order:   "It is hereby ordered that the county printing of Washoe county, Nevada, be and hereby is awarded to the Reno Evening Gazette until otherwise ordered by this board."   The relator, as district attorney of Washoe county, has applied

for a writ to review this order, upon the ground that it is in conflict with the foregoing statute.

Although several interesting questions might be raised upon that statute, and as to whether the order of the board is in conflict with it, the point which has been principally argued, and to which we shall confine this opinion, is whether the act is in conflict with section 17 of article IV. of the constitution, which provides that ."each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which shall be briefly expressed in the title." As originally enacted in 1865 (Gen. Stats., sec. 2197, *et seq.*), the law, the first section of which was amended as above stated, clearly embraced but one subject, which was correctly stated in the title to be "the purchase and preservation of public newspapers printed and published in the several counties in this state." Section 1 requires the recorders to subscribe for not less than one nor more than three such county papers as the board of commissioners may select. Sections 2 and 3 direct how the papers shall be preserved and paid for, what the recorder shall be paid for his services, and the penalty for a failure to discharge his duties in that regard. Section 4 provides a punishment for abstracting or defacing the papers purchased under the act.

Under the liberal construction of this clause of the constitution adopted by the courts (*State* v. *Board of Commrs. of Humboldt Co.*, 21 Nev. 235), this was undoubtedly a homogeneous and valid law. While it contains many details, they are all of matters connected with the purchase and preservation of the newspapers, the subject stated in the title, and consequently are unobjectionable.

But into this comparatively unimportant act, involving an expenditure of probably not to exceed $30 or $40 a year, this amendment, without anything in the title to indicate the purpose to do so, injects the matter of legal advertising and printing, amounting to hundreds and perhaps thousands of dollars, whether we regard that term as applying to all legal advertising and printing or simply to that to be done for the counties. As so amended, it seems to us that the act clearly embraces two separate and independent subjects, only one of which is stated in the title; and that the one not stated is the real subject, while the other is merely the incident.

Opinion of the Court—Bigelow, C. J.

The object sought to be accomplished by the constitutional provision is not difficult to discover, and has been many times stated by the courts. It was to defeat "log-rolling" legislation, or the combining in one act of incongruous and distinct subjects, and to prevent fraud upon members of the legislature and the general public by covering up, under innocent titles, vicious and harmful provisions, of which the titles gave no hint, and of which, consequently, no knowledge might be obtained until they were enacted into laws. (*State* v. *Silver*, 9 Nev. 227; *State* v. *Board of Comrs. of Humboldt Co.*, *supra*.) Among the great number of bills that are introduced every session, both members of the legislature and the people must necessarily largely depend for their knowledge of the purposes of the proposed measures upon the titles under which they are presented, and experience has amply demonstrated that the constitutional provision, if fairly and liberally construed, is a great aid to good legislation, and an embarrassment only to that which is not, or at least may not be, open and above board.

Certainly, *prima facie*, the subject of legal advertising and printing, and the subject of purchasing and preserving newspapers, are disconnected and independent matters. If they can be shown to be related in any manner it must be through some subtle reasoning that does not occur at first blush. The only argument seriously made in support of the law as amended is that the real purpose of the legislature in enacting it was that a record of current events, legal advertisements, etc., should be preserved, and that the better to accomplish that purpose it was germane to that object to provide that the paper to be preserved should contain all such advertisements. But that argument will not bear examination.

In the first place, the subject of the act must be the subject stated in the title; and, next, the constitution does not say that all matters connected with the purposes or objects of the act may be contained therein, but only matter connected with the subject so stated. For instance, in *Ex parte Hewlett*, 22 Nev. 333, the object of the legislature in enacting the amendment then under consideration was to afford better protection to the fish of the state, and all the provisions of the amendment were properly connected with that purpose;

but, as in the title its subject was stated to be the amendment of one particular section of the original act, the constitution did not permit its being extended to the amendment of other sections. If the title is restricted to certain purposes, the purview or body of the act must also be restricted to that subject. The act can be no broader than the subject expressed in the title. (Suth. St. Const., sec. 87.) The title here restricts the subject to the "purchase and preservation" of newspapers, and consequently the act cannot be extended to a regulation of what they shall contain. But the truth is the real subject of the amendment under consideration is not stated in the title at all. That subject is legal advertising and printing, or, as restricted to its narrowest limits, county advertising and printing. The statement that the purpose of the act is to amend the act concerning the purchase and preservation of newspapers is a mere cover. That this is the fact is easily shown by a consideration of the effect of the amendment. Previous to its enactment, the power to designate in what paper ordinary legal advertisements should be placed rested in the district judges and other officers, and county commissioners controlled the county printing. It was the duty of such commissioners, and certainly was within their power, where the possibility of competition existed, to let such contract to the lowest bidder. It may even be questionable whether the order of the board here is not in conflict with the statute, upon the ground that it constitutes the letting of a contract, without advertising, that amounts to more than $500. (Gen. Stats., sec. 1972; *Sadler* v. *Board of Comrs. of Eureka Co.*, 15 Nev. 39.) At any rate, they could advertise and let it to the lowest bidder, and, where they have acted with an eye single to the interests of the taxpayers, we may suppose they have done so. They could at least have some understanding about the prices to be charged, and if not satisfactory could go elsewhere. But by this simple amendment all this is changed. All power over legal advertising is taken from all the other officers, and vested in the county recorder alone. That officer simply subscribes for a paper, and, following that, the commissioners must designate it as the official paper, and all legal advertising and printing must be done therein. This, too, without regard to the

prices to be charged, or how poor an advertising medium it may be. We say without regard to price, for although the act provides that the "rate" shall not exceed the rates established by law, if that means the prices to be charged for such work, we find no such rates established for the great mass of county printing or legal advertising. Every county, every newspaper, and every individual in the state is, or may be, affected by the provisions of the act upon that subject, and when, as compared with these important changes in the law, we remember that the only change made by the act as to the purchase and preservation of newspapers is that, instead of the recorder subscribing for from one to three papers, to be selected by the commissioners, he is to subscribe for but one to be chosen by himself—an immaterial change, made only to facilitate the changes in the matter of advertising and printing—the real subject of the act becomes clearly apparent, and the statement in the title that its subject is the purchase and preservation of newspapers, decidedly ironical. It well illustrates the wisdom of the constitutional provision, and the necessity of a reasonable adherence to its directions. The title was concerning a matter of but little importance, and well calculated to escape attention. The bill, in truth, passed the legislature under false colors that gave no notice of its real character to those to be affected by it.

We have often held, and still hold, that the constitution is to be liberally construed, to the end that there shall be no unnecessary hampering of legislation, but there is a wide difference between liberal construction and nullification, which would be the effect of deciding that an act, passed under a title so misleading as this, is, notwithstanding, a valid law. The section might as well be stricken from the constitution at once as a dead letter. This distinction is well illustrated by cases heretofore decided by this court. Those of *State* v. *Ah Sam*, 15 Nev. 27; *Ex parte Livingston*, 20 Nev. 287, and *State* v. *Board of Comrs. of Humboldt Co.*, *supra*, of which we entirely approve, and which, in our judgment, contain nothing in conflict with what is here held, were all cases in which, by liberal construction, the court was able to uphold the validity of the acts then under consideration; while, on the other hand, the cases of *State* v. *Silver, supra,*

*State* v. *Hallock*, 19 Nev. 384, and *State* v. *Hoadley*, 20 Nev. 317, fell on the other side of the line, and, notwithstanding the rules of liberal construction, the acts then being reviewed were held to be unconstitutional.

Speaking of a similar provision in the constitution of New York, the supreme court of that state used language which we consider quite applicable here. It said: "The manifest intention of the constitutional provision was to require sufficient notice of the subject of proposed legislation of a private or local character to be so expressed in the title as to put not only interested parties, but also all persons concerned in the proposed legislation, upon their guard, and to inform all persons reading it of the general purpose and scope of the act. While this is not required to be done by pursuing any formula, or with much detail of specification, and great liberality of construction should be indulged in by the courts to uphold the constitutionality of legislation, yet a due regard to constitutional requirements demands that, when its plain and obvious purposes are disregarded or evaded, the judgment of the court should give effect to its provisions." (*Johnson* v. *Spicer*, 107 N. Y. 185, 202.)

To our minds it is quite clear that this title not only gave no such notice as is required in that case of the intention to deal with the matter of legal advertising and printing, but that it was well calculated to actually mislead by inducing the belief that it did not refer to any such subject. It follows that, as passed, the act is evasive in both the letter and spirit of the section of the constitution under consideration. It embraces the very evil against which the provision was directed, and under such circumstances the court would fail in its most important function if it did not follow the mandates of the higher law.

The act being unconstitutional, and consequently no law, so far, at least, as the subject of legal advertising is concerned, the order of the board cannot be in conflict with it, and the writ will therefore be dismissed.

It is so ordered.

BELKNAP, J.: I concur.

BONNIFIELD, J., dissenting:

By following the logical course of reasoning adopted by

this court heretofore in cases similar to this, and adhering to the well-established rules of interpretation for considering the question of the constitutionality of statutes, a proper solution of the matters in hand may be arrived at.   In order to keep the subjects under consideration more clearly in view, the title of the amendatory act and the provisions of the act are here given:  "An act to amend an act entitled 'An act for the purchase and preservation of public newspapers, printed and published in the several counties in this state.'  Approved February 1, 1865.  Section 1.  *  *  * The recorders of the several counties of this state are hereby authorized and required to subscribe for one newspaper printed and published at the county seat of each county of the state, and the board of county commissioners of the respective counties shall designate the paper so subscribed for as the official paper of the county wherein all legal advertising and printing shall be done; *provided*, the rate for such work shall not exceed the rate now established by law.   No paper shall be subscribed for and designated unless it shall have been established for at least one year, and is printed and published in its entirety at its place of establishment."

It is claimed that this act is in conflict with the provisions of section 17, article IV., of the constitution, which are as follows:  "Each law enacted by the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title." It is argued that there is more than one subject embraced in the act, to wit:   (1) The subject of the purchase and preservation of public newspapers; (2) the subject of legal advertising and printing—and that the the second subject is not matter properly connected with the first subject, which is expressed in the title.   This is, as I understand it, the substance of the argument, and the essence of the contention raised against the validity of the law.

Before proceeding to the specific consideration of the act in question, and its title, it may be well to call attention to the substance of certain rules adopted and recognized by the courts in passing upon such questions as are involved in this case, and to other preliminary matters:

First—The presumption is that the legislature had an

honest intent and had in view a meritorious object in pass-
ing the act.

Second—It will be presumed that the members had aver-
age intelligence, and understood the object of the act and the
object expressed in the title.

Third—No legislative act will be annulled by the courts
unless it clearly appears to be in conflict with the constitu-
tion; that every reasonable construction and intendment
will be indulged to harmonize the two instruments, and, if
there be a rational doubt as to the invalidity of the act, the
doubt will be solved in favor of its validity.

Fourth—If the matters in the act are not independent,
separate, incongruous, and disconnected matters from, and
bear no proper connection with or relation to, the general
subject of the act as indicated, or briefly expressed in the
title, the act will stand the constitutional test of said section
17 of article IV., no difference how many separate matters it
may contain. This latter rule is illustrated in the case of
*State* v. *Board of County Comrs.*, 17 Nev. 101, in which the
court, by way of illustration, say: "An act concerning
crimes and punishments is not unconstitutional for the rea-
son that it treats of different crimes. Escape, larceny, rob-
bery, and murder are different crimes; but they are upon
the same subject, *viz.*, crimes."

In *Ex parte Livingston*, 20 Nev. 287, in illustration of
this rule, the court said: "Take, for example, the general
appropriation act. Every section, in fact, most every line,
in a strict sense, refers to a different subject, as different
appropriations and for different purposes. * * * It is
not designed to require the body. of the act to be mere
repetition of the title. Neither is it intended to prevent
including in the bill such means as are reasonably adapted
to secure the object indicated by the title. It is intended to
prevent legislators from being entrapped into the careless
passage of bills on matters foreign to the ostensible purpose
of the statute as entitled."

In case of *State* v. *Board of Comrs. of Humboldt Co.*, 21
Nev. 235, the title of the act is, "An act fixing the salaries of
the officers of Humboldt county and consolidating certain
offices." It was the contention on the part of the relator
"that both the act and the title embrace more than one sub-

ject, to wit, the subject of salaries and the subject of consolidating offices, and is therefore in contravention of section 17 of article IV. of the constitution of Nevada." The court properly held that the act was valid. The rules of interpretation are so concisely stated, and the logical line of argument so clear, in the opinion, which is so pertinent and applicable to the case at bar, that large quotations are here given and adopted as a part of this opinion. After specifying the objects of section 17, art. IV., of the constitution, the court said: "This, then, being the mischief against which this clause of the constitution is directed, it should be so construed as to correct the evil, but at the same time not to needlessly thwart honest efforts at legislation. There is scarcely any subject of legislation that cannot be divided and subdivided into various heads, each of which might be made the basis of a separate act, and in which the connection between them may be made a matter of controversy. The reports show that seldom, indeed, has the validity of a law come seriously in question without its being claimed that it was in conflict with this clause of the constitution. This shows how necessary it is to adopt liberal rules of construction in order to sustain laws not coming within the spirit and meaning of the constitutional prohibition. If the provisions of a statute all relate directly or indirectly to the subject expressed in the title, it is permissible to unite them in the same act." Citing *Coal & Iron Works Co.* v. *Brown*, 13 Bush. 685; *Phillips* v. *Bridge Co.*, 2 Metc. (Ky.) 222; *State* v. *Kinsella*, 14 Minn. 524 (Gill. 395). "The insertion in a law of matters which may not be verbally indicated by the title, if suggested by it or connected with it, or proper to the fuller accomplishment of the object so indicated, is held to be in accordance with its spirit. All presumptions are in favor of the constitutionality of a statute, and it will be held valid until the mind of the court is clearly convinced to the contrary." Citing *Evans* v. *Job*, 8 Nev. 322; *Railroad Co.* v. *Morris*, 65 Ala. 193. "In all cases of doubt, every possible presumption and intendment will be made in favor of the constitutionality of the act in question. The courts will only interfere in cases of clear and unquestioned violation of the fundamental law." Citing *State* v. *Irwin*, 5 Nev. 120; *People* v. *Parks*, 58 Cal. 635. "The objections should be grave, and

the conflict between the constitution and statute palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraces more than one subject." Citing *Montclair* v. *Ramsdell*, 107 U. S. 155; Suth. St. Const. sec. 82. "It is only the subject of the act which must be stated in the title; matters properly connected with the subject need not be mentioned." Citing *Humboldt Co.* v. *Churchill Co.*, 6 Nev. 30. "If they are mentioned it simply makes the title unnecessarily prolix."

If the legislature that passed the original act in 1865 could have, under the title given, properly incorporated the provisions contained in the act of 1895, certainly no one will deny that it was competent for the legislature of 1895 to do so, unless the title of the late act is restrictive, and this precludes it; that is, unless it specifies some particular part of the original act as the object of amendment, as was done in the title of the act considered in *Ex parte Hewlett*, 22 Nev. 333. But the title of the act of 1895 is not restrictive. It does not specify any particular in which it is proposed to amend the old act, nor does not limit the amendment to any particular matter. The whole scope of legislation is left open to such matter as would have been proper to enact by the former legislature.

In *State* v. *Ah Sam*, 15 Nev. 31, and in several other cases, the subject of an act and the object of an act are treated as synonymous terms by this court, and they will be so regarded in this opinion.

Now, bearing the foregoing rules of interpretation in mind, let the vital questions in this case be examined. The title of the old act is the substance of the title of the amendatory act.

What, then, is the subject of the act, or, in other words, what was the object the legislature had in view in passing it, and what object is indicated by its title, to wit, "An act for the purchase and preservation of public newspapers?"

What is a newspaper? "A newspaper is a sheet of paper printed and circulated, at short intervals, for conveying intelligence of passing events; a public print that circulates news, advertisements, proceedings of legislative bodies, public documents, and the like." (Webst. Dic.) This definition accords with the general understanding of the public. There could have been no disagreement among the members of the

legislature, and no member could have been forgetful as to what newspapers are while reading the title or considering the bill. It is manifest that the object the legislature had in view in passing it (the original as well as the amendatory act) was not simply to preserve printed sheets of paper, but to preserve, in newspaper form, intelligence of passing events, for public use. To subserve this object there could not have been any legislation more appropriate than to provide for the purchase and preservation of newspapers—the instruments containing the intelligence desired to be preserved. And what more appropriate title than the one adopted—expressive of, and clearly indicating, the general object of the act—could have been devised?

The general object of the act being clear, and the title of the act clearly indicating the object, it seems to me that no room is left for the assumption that any member of the legislative body or any member of the general community might have been misled by the title. The general object of the act being to preserve intelligence of passing events in newspaper form, and the title of the act clearly indicating that object in specifically giving the object to be "for the purchase and preservation of public newspapers"—the very instruments containing such intelligence—it follows that the provision of the act requiring that "all legal advertising and printing shall be done" in these newspapers is not legislating upon a matter that is not germane to and properly connected with the general object of the act, as clearly indicated by the title. Legal advertising or printing is intelligence of one class of passing events. The legislature having exclusive control of legal advertising and printing, it certainly is matter properly connected with the subject or object above named to require that this class of intelligence or current news shall be preserved in manner and form as the other classes. This class is not only matter properly connected with the general subject, but is a part of the general intelligence of passing events, the preservation of which is the object of the act. If the object of the act and the object as expressed in the title can be reasonably construed in two ways, one militating against the constitutionality of the act and the other sustaining the law, it is imperatively required of the court to adopt the latter construction.

In *State* v. *Ah Sam,* 15 Nev. 27, the title of the amended act is "An act to regulate the sale or disposal of opium and to prohibit the keeping of places of resort for smoking or otherwise using opium." The act prohibits the sale of opium, unless upon the prescription of a physician, and in that case only allows druggists and apothecaries to sell it. It prohibits the keeping of places of resort for smoking opium, prohibits the leasing of houses for such purposes, and finally it prohibits all persons from resorting to places kept for such purposes, and provides severe penalties for resorting thereto. It will be observed that the subject of resorting to such places is not expressed in the title in terms. Ah Sam was convicted under this act, not for selling opium, not for keeping a place of resort for smoking it or otherwise using it, but for simply resorting to such a place. On appeal to this court his counsel claimed and urged that the act embraced two or more subjects: (1) The regulation of the sale of opium; (2) the prohibition of keeping places of resort for smoking opium; (3) makes it criminal for any one to resort to a place kept for smoking opium—and that the latter subject is not embraced in the title. The court held the act to be constitutional, and the conviction of Ah Sam proper. It said: "Clearly it does not embrace more than one subject, and if its title had been 'An act for the suppression of opium dens' we think no one could be found to question its constitutionality. It is apparent that the legislature, in passing the act in question, had but one object in view, *viz.,* the suppression of places commonly known as opium dens, and nothing is contained in the law that is not conducive to that end." So it may be said with equal force in this case, on the same line of argument, and by the same logical course of reasoning, that clearly the act does not embrace more than one subject, and if the title had been "An act to preserve intelligence of passing events or current news contained in newspapers" we think no one would have been found to question its constitutionality. It is apparent that the legislature in passing the act in question had but one object in view, *viz.,* to preserve intelligence of passing events or current news, found in newspapers, and nothing is contained in the law that is not conducive to that end. The court in that case further said: "The title of the

act does not profess in explicit terms to aim at the suppression of opium dens by every legitimate means, but merely to prohibit the keeping of such places, and upon strict rules of interpretation it would be difficult to maintain that the latter expression is as broad as the former, or that it will cover anything besides provisions for punishing the keepers of such resorts." That is, upon strict rules of interpretation, the title embraces the prohibition of keeping such places of resort, and the punishment of the owners and keepers thereof, and does not embrace the matter of making it a criminal offense for any one to resort to such places. And the court said: "In dealing with this particular objection to parts of statutes, which, as a whole, embrace but one subject of legislation, the courts of the different states have adopted an exceedingly liberal rule of construction in favor of their validity. * * * It is not inconsistent with these provisions [of the constitution] to give some slight enlargement to the literal meaning of the title of a law." So, applying what the court said in that case to this one, it may be said here that the title of the act does not profess in explicit terms to aim at the preservation of intelligence of passing events or current news by every legitimate means, but merely to preserve newspapers containing such intelligence or news, and it is not inconsistent with the provisions of the constitution to give some slight enlargement to the literal meaning of the title of the law, and the said liberal rules adopted by the courts of the several states should be adopted in this case.

"The constitution does not require that the title of an act shall be the most exact expression of the subject which could be invented. The general purpose of section 17, article IV., of the constitution, is accomplished when the law has but one general object, which is fairly indicated by its title. The different steps by which the result is to be accomplished are not different subjects, but minor parts of the same subject." (*Kline* v. *Kinkead*, 16 Nev. 194.) It is submitted that in this case there is but one general object of the act, which has been pointed out herein, and which is fairly indicated in the title; that the step of publishing legal advertising and printing in the designated paper is a step by

which the result is to be accomplished, and is not a different subject, but a minor part of the same subject.

If the cases of *Esser* v. *Spaulding*, 17 Nev. 289; *State* v. *Atherton*, 19 Nev. 332; and *Ex parte Livingston*, 20 Nev. 282, be examined and the interpretations there given and the reasoning therein contained be applied in this case, the constitutionality of the act of 1895 will further clearly appear. The objection that the act regulates legal advertising and printing is not a valid objection to its constitutionality. This is simply an incident to and not the object of the act. Notice by publication is required to be given in the following matters: Delinquent tax suits, sale of property for delinquent taxes, notice to creditors of deceased persons, notice of elections, expiration of time of registration, meeting of the board of equalization, and in many other matters. These notices are legal advertisements or legal printing, and are simply incidents to and not the subject of the several acts wherein their publication is required. The objections that the act requires legal advertising and printing to be done in these papers without regard to the price to be charged, and that no rates are fixed by law, are not well taken. There are rates fixed by law for some legal advertisements.

If the paper should refuse to do any given work at the rate fixed for similar work, it certainly would leave the matter open for competition, and to the lowest bidder; for the act provides that legal advertising and printing shall be done in the designated papers; "*provided*, the rate for such work shall not exceed the rate established by law." If there be no rate established for the particular work, certainly it is not required that such work shall be done in these papers, unless terms can be agreed on by the officers and the proprietors of the papers, otherwise they would have to do the work without compensation, if at all. The matter of rates, in all cases where rates are not fixed by law, is left exactly where it was before the law was passed. The county recorder only designates the paper; he has nothing to do with the rates, nor with legal advertising and printing, but they are left in the hands of the respective officers as before. It is not probable that the respondents, or any officer having such printing to be done, would agree with the designated paper for higher rates than those asked by a competitive paper.

From the foregoing views it follows, not only that the public interest cannot be injured by the ·law, but that the act is clearly constitutional, and upon the latter ground the proceedings of the respondents in the premises should be annulled.

I therefore respectfully dissent from the judgment of the court.